Kenneth R. **MARTINEZ**, on behalf of himself and all others similarly situated, Plaintiffs,

v.

John T. **DUNLOP**, in his capacity as Secretary of the United States Department of Labor, et al., Defendants.

No. C–75–1346 WHO.

United States District Court, N. D. California.

March 8, 1976.

Timothy H. McCarthy, California Rural Legal Assistance, Salinas, Cal., for plaintiffs.

James L. Browning, Jr., U. S. Atty., William T. McGivern, Jr., Asst. U. S. Atty., Evelle J. Younger, Atty. Gen., Elizabeth Palmer, Asst. Atty. Gen., Asher Rubin, Deputy Atty. Gen., San Francisco, Cal., for defendants.

OPINION

ORRICK, District Judge.

This suit challenges the recoupment of overpayments received as unemployment benefits under Title II of the Emergency Jobs and Unemployment Assistance Act of 1974 (P.L. 93–567) (the Act). Plaintiff Kenneth R. Martinez brings this action on behalf of himself and a class of all California residents who, through no fault of their own, received overpayment of benefits under the Special Unemployment Assistance Program (SUA) and whose overpayments were recouped without consideration of waiver under

applicable state law. Plaintiff contends that by failing to apply Section 1375 of the California Unemployment Insurance Code, which permits the waiver of overpayments in limited instances, the defendants have abused their authority and acted outside their statutory discretion.

Defendants have moved to dismiss for lack of jurisdiction, and in the alternative for summary judgment on the merits. The plaintiff has filed cross-motions for summary judgment and has moved to certify the class pursuant to Rule 23 of the Federal Rules of Civil Procedure. For the reasons hereinafter set forth, I deny defendants' motions to dismiss and for summary judgment. I grant the plaintiff's motions for summary judgment and class certification.

## I.

The Act established a temporary federal SUA to meet aggravated unemployment conditions and to give coverage to workers who would not ordinarily be eligible for compensation under existing unemployment programs. The program is implemented jointly by the state and federal government. The plan calls for an intermeshing of federal unemployment law with applicable state provisions. The federal government provides the funds, and the state officials are authorized to dispense the money.

Section 207 of the Act provides that:

"Except where inconsistent with the provisions of this title, the terms and conditions of the applicable State unemployment compensation law which apply to claims thereunder for regular compensation and the payment thereof shall apply to claims for assistance under this title and the payment thereof."

Prior to June 30, 1975, when the Act was amended, the federal statute contained no provisions specifically dealing with the recovery or waiver of overpayments. However, California unemployment insurance law did and does contain a clear provision addressed to overpayment of unemployment benefits. Section 1375 of the California Unemployment Insurance Code provides:

"Any person who is overpaid any amount as benefits under this part is liable for the amount overpaid unless:

(a) The overpayment was not due to fraud, misrepresentation or wilful nondisclosure on the part of the recipient, and

(b) The overpayment was received without fault on the part of the recipient, and its recovery would be against equity and good conscience."

Essentially, California law allows the waiver of overpayments that are administrative errors.

Despite the lack of federal comment on the overpayment issue, and despite the clear authorization to apply state law when not inconsistent with federal law, the Secretary of Labor issued federal regulations specifically prohibiting the waiver of SUA overpayments made under the Act. 20 C.F.R. § 619.13. These regulations provide in pertinent part:

"(a) If the State agency of the applicable State or a court of competent jurisdiction finds after a determination and opportunity for a fair hearing thereon, that an individual has received a payment of SUA to which the individual was not entitled under the Act and this regulation, irrespective of whether or not the payment was due to the individual's fault or misrepresentation, the individual shall be liable to repay to the applicable State the total sum of the payment to which the individual was not entitled * * *.

* * * * * *

(f) Any provision of the applicable State law providing for waiver of recovery of overpayments of compensation shall not be applicable to SUA * * *."

These regulations, therefore, prohibited the application of Section 1375 of the California Unemployment Insurance Code authorizing the waiver of overpayments made without fault on the part of the recipient. Pursuant to these regula-

tions, from February 6, 1975, to June 30, 1975, the state officials implementing the Act recouped SUA overpayments without first considering whether the incorrect payments were due to fraud on the part of the recipient, whether the overpayments were the result of administrative error, or whether it would be inequitable to recoup the overpayments. As a practical matter, the recoupment was administered by withholding future payments that were due under the Act. This meant that individuals who were relying on a steady support of SUA payments were suddenly left without this source of income.

On June 30, 1975, the Act was amended by the Emergency Compensation and Special Unemployment Assistance Extension Act of 1975 (P.L. 94–45) (the 1975 Act). Section 203(b)(1) of the 1975 Act made it clear that congressional policy authorized the waiver of overpayments made to recipients where the state agency determined that the overpayments were made without fault on the part of the recipient and when recoupment would be contrary to equity and good conscience.

As a practical matter, in California the 1975 Act made it clear that the standards of Section 1375 of the California Unemployment Insurance Code were to apply. Since all states did not have provisions similar to the California Code section, the specific inclusion of the waiver provisions in the federal 1975 Act established the policy of waiver of overpayments on a national basis. Since the 1975 Act was passed, the Secretary of Labor has not enforced, and has been revising, regulation 20 C.F.R. § 619.13.

Plaintiffs in this action are individuals who claim they got caught in the interim period between February 6, 1975, when the regulations prohibiting waiver were put into effect, and June 30, 1975, when the congressional policy permitting waiver was clarified. They now seek to compel the defendants to review the files of the 1,962 individuals whose overpayments were recouped without consideration of waiver in order to determine which of these individuals was entitled to keep the payments under the state law provisions that should have been applied. Plaintiffs ask that the defendants be required to return the improperly recouped overpayments.

## II.

The federal defendants' reliance on the doctrine of sovereign immunity as a bar to judicial review is misplaced. Although it is the general rule that a suit may not be maintained against the United States without its consent if the judgment sought would expend itself on the public treasury or interfere with public administration, well recognized exceptions to this sovereign immunity doctrine permit suit when (1) the officers are acting beyond their statutory authority and (2) even though within the scope of their authority, the powers themselves or the manner in which they are exercised are constitutionally void. *Dugan v. Rank,* 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963). Here the plaintiffs contend that the Secretary of Labor in enacting the regulations prohibiting waiver of overpayments was acting in excess of his statutory authority. This falls squarely within the exceptions to the doctrine of sovereign immunity. *Florida v. Weinberger,* 492 F.2d 488 (5th Cir. 1974); *Phillips v. Dawson,* 393 F.Supp. 360 (W.D.Ky.1975).

Sovereign immunity not barring the action, the Court must now consider whether jurisdiction is proper under the statutes alleged by plaintiffs. Plaintiffs have alleged four independent bases of jurisdiction.[1] However, the Court need not consider all of these since it is clear that jurisdiction is proper under at least two of the statutes relied on, the Administrative Procedure Act, 5 U.S.C. § 701

---

1. Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*; Commerce Jurisdiction, 28 U.S.C.

§ 1337; Mandamus, 28 U.S.C. § 1361; Civil Rights Jurisdiction, 28 U.S.C. § 1343(3).

*et seq.,* and mandamus jurisdiction, 28 U.S.C. § 1361.

A. *The Administrative Procedure Act*

■ 5 U.S.C. § 702 states:

"A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."

Here plaintiffs claim they have been injured by the actions of the Secretary of Labor, i. e., by agency action, in promulgating the regulations prohibiting waiver of overpayment. Although there is a split in judicial opinion as to whether the Administrative Procedure Act acts as a waiver of sovereign immunity (*cf. Short v. Murphy,* 368 F.Supp. 591 (E.D.Mich. 1973); *National Helium Corp. v. Morton,* 361 F.Supp. 78 (D.Kan.1973); *compare Kingsbrook Jewish Medical Center v. Richardson,* 486 F.2d 663 (2d Cir. 1973); *Mulry v. Driver,* 366 F.2d 544 (9th Cir. 1966)), the Ninth Circuit has held that it does. In *Mulry,* the district court relied on the sovereign immunity doctrine and dismissed a suit by physicians employed at a Veterans Administration Hospital. The Ninth Circuit reversed because the district court had failed to consider the propriety of jurisdiction under the Administrative Procedure Act, where the necessary consent to suit is found to exist. In this suit there is no question that plaintiffs allege a wrong based on agency action and come within the jurisdictional ambit of the Administrative Procedure Act.

B. *Mandamus Jurisdiction*

■ It is also clear that jurisdiction is proper under the mandamus statute. 28 U.S.C. § 1361 grants the district court jurisdiction over an action:

" * * * [I]n the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

While mandamus will not lie to compel a defendant to exercise discretion or judgment in a particular way, I am not persuaded by the defendants' argument that mandamus is inappropriate here since they had no clear ministerial duty to the plaintiffs in the face of the federal statute's silence on the subject SUA overpayments. Even assuming *arguendo,* that the federal directive to apply state law where applicable did not impose a clear duty on the federal officials, the Court is now being asked to clarify that duty by construing the statute. Mandamus is appropriate even when a statute requires judicial or administrative construction to clarify a duty so long as the construing body is not telling the defendant how to exercise his discretion. *Knuckles v. Weinberger,* 511 F.2d 1221 (9th Cir. 1975).

III.

■ The Court must determine whether the action of the Secretary of Labor in promulgating 20 C.F.R. § 619.13(f), which prohibited the waiver of SUA overpayments under applicable state law, was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law". *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 414, 91 S.Ct. 814, 822, 28 L.Ed.2d 136, 152 (1971). I find that it was.

It is undisputed that the Act did not specifically address the question of waiver or recoupment of overpayments. It is also clear that the Act stated that state law was to apply, except where inconsistent with federal law. California law provided for the waiver of overpayments in certain circumstances. The federal statute being silent on the overpayment issue could not have been in conflict with state law. Therefore, under the express terms of the Act, California law should have applied. The promulgation of a regulation forbidding the application of state law was an abuse of discretion.

The only legal justification that the Secretary now advances for his regulation is a 1971 opinion by the Comptroller General dealing with the question of overpayment waivers under the Disaster

Relief Act of 1969 (P.L. 91–79). In that opinion the Comptroller advised that such a waiver, in the absence of express congressional authorization, would be an improper expenditure of the federal treasury. Since the 1971 opinion was drafted in response to inquiry about a totally different act, it is questionable authority, at best, to support the SUA overpayment regulations. Moreover, even within the guidelines of the Comptroller General's report, waiver of SUA overpayments would have been the proper course since the Congress in essence authorized such a waiver when proper under state law.

To avoid the burdensome task of going back over the 1,962 cases where overpayments were recouped between February 6, 1975, and June 30, 1975, and now determining whether the payments should have been recouped under the standards of Section 1375 of the California Unemployment Insurance Code, the defendants raise the practical consideration that the costs of retroactively correcting any errors will outweigh the benefits to be gained. Each overpayment that was recouped averaged only $47, bringing the total recoupment figure to the neighborhood of $92,500. Not all individuals whose files are reviewed will be entitled to a return of the recouped payments since some, no doubt, will have obtained the overpayments by fraud. Therefore, the amount of refunds will actually be somewhat below the $92,500 range. The defendants estimate that the cost of administering a repayment program will range near the $35,000 mark, costing an estimated $18 per claim.

■ Despite the practicalities of this cost benefit analysis and despite the relatively small size of the SUA overpayments when examined on an individual basis, the cost of rectifying a legal wrong should not insulate the wrongdoer from having to correct illegal actions. *Illinois Bell Telephone Co. v. Slattery*, 102 F.2d 58 (7th Cir. 1939). The defendants, having acted improperly beyond the scope of their authority, must now make amends.

## IV.

■ On plaintiff's motion, I certify a Rule 23(b)(2) class of all other California residents who received overpayments under the Act, which overpayments were partially or wholly recouped by the defendants without consideration of waiver prior to the implementation of the 1975 Act.

I find that this class meets all requirements of Rule 23(a) and 23(b)(2). The class, numbering 1,962, is so numerous that joinder of all members is impractical. The questions of fact and law and defenses of the named plaintiff, Kenneth R. Martinez, are not only typical of the class members, they are virtually identical since all these individuals received overpayments under the Act and were precluded from a consideration of waiver of eligibility due to the Secretary of Labor's challenged regulations. Based on this commonality of claims, the named representative can adequately represent the class members. The attorneys for the named plaintiff have shown through their work on these motions that they can most ably represent the class.

The defendants by applying 20 C.F.R. § 319(f) and refusing to apply Section 1375 of the California Unemployment Insurance Code have made injunctive and declaratory relief proper for the class as a whole.

■ The only opposition to the class certification raised by the defendants is on the ground that Martinez is not a typical representative of the class since he has not availed himself of the proper administrative remedies before instituting this federal action. Defendants argue that having failed to exhaust administrative remedies, Martinez cannot bring this action on an individual basis, and cannot bootstrap his way into court by pleading a representative action. I do not find that this failure to exhaust deprives the plaintiff of standing to bring an individual or a representative action. Defendants raise this exhaustion argument very late in the day despite extensive briefings on these motions. Even

now defendants do not specify what administrative avenues were available to the plaintiff to challenge the Secretary of Labor's regulation. Moreover, even assuming that some administrative grievance procedures were available to plaintiff, exhaustion is not a hard and fast rule. Requiring exhaustion makes sense when the agency will help prepare a detailed factual record that can be reviewed by the court, or when special agency expertise is required. *McKart v. United States,* 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969); *Ashland Oil Co. of Cal. v. Federal Energy Admin.,* 389 F.Supp. 1119 (N.D.Cal.1975). Here, however, the plaintiff and the class challenge the construction of a statute. This is a matter that requires the special expertise of a court, not an administrative agency. The exhaustion claim being the only opposition raised by defendants, and that claim being invalid, the class is properly certified pursuant to Rule 23(b)(2).

IT IS HEREBY ORDERED that:

1. The defendants and their successors in office, agents, assigns, employees, and all persons acting by, through, or under them, and all persons subject to their supervision, are permanently enjoined from enforcing 20 C.F.R. § 619.13 insofar as it authorizes recovery of SUA overpayments in circumstances not authorized under the 1975 Act or California law.

2. The defendants will identify all persons against whom SUA overpayments have been assessed.

3. The defendants will re-evaluate the case of each such person to determine:

(a) If the overpayment was due to the fault of the claimant; and

(b) Whether failure to waive overpayment would violate consideration of equity and good conscience.

4. The defendants, after such re-evaluation, will send written notice to each person whose case has been re-evaluated informing each such person of:

(a) The fact that the person's case has been re-evaluated because of a change in law;

(b) The results of said re-evaluation with respect to the claimant's fault as to such overpayments and whether, considering equity and good conscience, said repayment of overpayment should be waived; and

(c) The right of such person to a fair hearing on the issues of fault and consideration of the equities, should the person disagree with any part of the re-evaluation decision.

5. Defendants will refrain from any further recoupment of SUA overpayments until the claimant has had a fair hearing within the time allowed by law.