Reynaldo **TONGOL et al.,**
**Plaintiffs-Appellees/Cross-Appellants,**

v.

**William J. USERY, Jr., et al.,**
**Defendants-Appellants/Cross-Appellees.**

**Nos. 77–2291, 77–3351.**

United States Court of Appeals,
Ninth Circuit.

Aug. 6, 1979.

William T. McGivern, Jr., Asst. U. S. Atty., Richard M. Pearl, San Francisco, Cal., for defendants-appellants.

Asher Rubin, William T. McGivern, Jr., Asst. U. S. Atty., Richard M. Pearl, San Francisco, Cal., for plaintiffs-appellees.

Before HUFSTEDLER and CHOY, Circuit Judges, and BARTELS,* District Judge.

HUFSTEDLER, Circuit Judge:

These appeals raise questions concerning the validity of a federal regulation, 20 C.F.R. § 618.15, prohibiting states from waiving recoupment of overpayments in Federal Supplemental Benefits provided under the Emergency Unemployment Compensation Act of 1974 ("the Act"), P.L. 93–572, 88 Stat. 1869, and the availability of attorneys' fees under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, for plaintiffs who successfully challenged the regulation. The district court held that the regulation barring waiver of recoupment was unenforceable in states with statutes permitting waiver. But the district court held that attorneys' fees were not available for the prevailing plaintiffs under the Civil Rights Attorney's Fees Awards Act of 1976. The Secretary of Labor ("the Secretary") appeals the district court's judgment on the merits. Plaintiffs appeal the denial of attorneys' fees.

---

* Honorable John R. Bartels, Senior United States District Judge, Eastern District of New York, sitting by designation.

## I

In order to augment existing unemployment compensation programs in states with extraordinarily high unemployment, Congress passed the Emergency Unemployment Compensation Act of 1974. (H.R.Rep.No. 93–1549 (1974), 1974 U.S.Code Cong. & Admin.News, p. 6842.) Under the Emergency Extended Benefits program established by the Act, federal funds were provided for states to pay up to 26 weeks of addition unemployment compensation to persons exhausting their rights to compensation under existing programs.

Under the terms of the Act, each state was directed to apply its own unemployment insurance law in administering the Federal Supplemental Benefits. Section 102(d)(2) of the Act provided:

"the terms and conditions of the State law which apply to claims for regular compensation and to the payment thereof shall (except where inconsistent with the provisions of this Act or regulations of the Secretary promulgated to carry out this Act) apply to claims for emergency compensation and the payment thereof."

Although the federal Act was silent on recovery of overpayments, California and at least 24 other states (as well as the District of Columbia and Puerto Rico) authorized waiver of recoupment in certain circumstances. Section 1375 of the California Unemployment Insurance Code provides:

"Any person who is overpaid any amount as benefits under this part is liable for the amount overpaid unless: (a) The overpayment was not due to fraud, misrepresentation or wilful nondisclosure on the part of the recipient, and (b) The overpayment was received without fault on the part of the recipient, and its recovery would be against equity and good conscience."

On February 6, 1975, the Secretary of Labor promulgated regulations requiring states to recover overpayments in Federal Supplemental Benefits ("FSB") regardless of any state laws permitting waiver of recoupment. The regulations provided that:

"[i]f the State agency of the applicable State or a court of competent jurisdiction finds, after a determination and opportunity for a fair hearing thereon, that an individual has received a payment of FSB to which the individual was not entitled under the Act and this Part, whether or not the payment was due to the individual's fault or misrepresentation, the individual shall be liable to repay to the applicable State the total sum of the payment to which the individual was not entitled, and the State agency shall take all reasonable measures authorized under any State law or Federal law to recover for the account of the United States the total sum of the payment to which the individual was not entitled." (20 C.F.R. § 618.15(a).)

The regulations further specified that "[a]ny provision of the applicable State law providing for waiver of recovery of overpayments of compensation shall not be applicable to FSB." (20 C.F.R. § 618.15(f).)

On May 17, 1976, Reynaldo Tongol filed a class action against the Secretary of Labor and three California defendants (the California Employment Development Department and its director, and the California Unemployment Insurance Appeals Board) on behalf of all persons who had received FSB overpayments and who resided in states with laws permitting waiver of recoupment. Tongol sought declaratory and injunctive relief against the enforcement of the regulation prohibiting waiver on the grounds that it violated the equal protection clause of the Fourteenth Amendment and the Emergency Unemployment Compensation Act of 1974.

On January 28, 1977, the district court certified plaintiff class [1] and granted sum-

---

1. The class certified by the district court consisted of "all individuals nationwide who have received, are receiving, or will receive overpayments under the EME [Emergency Extended Benefits] program, the recoupment of which could be waived under the laws of those states with waiver provisions but for the actions of the defendants complained of herein." The district court also certified "a subclass, consisting of all California residents who have received,

mary judgment to plaintiffs. The district court held that the regulations "requiring the recovery of FSB overpayments in circumstances not authorized by state law are without statutory authority and are therefore void and unenforceable." The district court enjoined defendants from enforcing the regulations and ordered them to reevaluate the cases of persons against whom overpayments had been assessed.

The district court's decision was largely premised on its previous decision in *Martinez v. Dunlop* (N.D.Cal.1976) 411 F.Supp. 5, which we affirmed *sub nom. Martinez v. Marshall* (9th Cir. 1977) 573 F.2d 555. In *Martinez,* the district court invalidated another regulation barring waiver of recoupment, 20 C.F.R. § 619.13, that was virtually identical to the regulation at issue here.[2] The regulation struck down in *Martinez* barred states from waiving recoupment of overpayments in Special Unemployment Assistance ("SUA") benefits established by the Emergency Jobs and Unemployment Assistance Act of 1974, P.L. 93–567, 88 Stat. 1845. The program authorizing payment of SUA benefits and the program providing the Federal Supplemental Benefits at issue here were part of a package of programs passed by Congress at the same time to deal with the unemployment problem. (Sen. Rep.No.94–208 (1975), 1975 U.S.Code Cong. & Admin.News, pp. 377, 378–79.) Like the Act at issue here, the Emergency Jobs and Unemployment Assistance Act of 1974 contained a provision mandating the application of state law. The district court in *Martinez* held that the regulation barring waiver of recoupment was invalid in states with statutes authorizing waiver because it conflicted with the congressional command to apply state law.

On appeal, we affirmed the district court in *Martinez.* We held "that Regulation 619.13 is not consistent with the legislative purpose of the Act and is in excess of the Secretary's statutory authority . . . ." (*Martinez v. Marshall, supra,* 573 F.2d at 560.) We observed that the Secretary's regulation was "inconsistent with previous regulations under similar statutory provisions" because waiver of recoupment had been permitted by the Secretary in four earlier unemployment insurance programs.[3] We noted that the Secretary had barred waiver under only two statutes—the Disaster Unemployment Assistance Act, 42 U.S.C. § 5121 *et seq.,* which did not mandate the application of state law, and the Emergency Unemployment Compensation Act of 1974, the program at issue in this case. Although we reserved judgment on the validity of 20 C.F.R. § 618.15, we noted that it "departed from past practices in the area of unemployment compensation regulation." (*Martinez v. Marshall, supra,* 573 F.2d at 559 n. 4.)

In light of our decision in *Martinez,* the district court's decision invalidating 20 C.F.R. § 618.15 was entirely proper.

---

are receiving, or will receive overpayments under the EME program, recovery of which could be waived under California Unemployment Code Section 1375 but for the actions of the defendants complained of herein."

**2.** The regulation at issue in *Martinez,* 20 C.F.R. § 619.13, promulgated on the same day as 20 C.F.R. § 618.15, provided in pertinent part: "If the State agency of the applicable State or a court of competent jurisdiction finds after a determination and an opportunity for fair hearing thereon, that an individual has received a payment of SUA [Special Unemployment Assistance] to which the individual was not entitled under the Act and this regulation, irrespective of whether or not payment was due to the individual's fault or misrepresentation, the individual shall be liable to repay to the applicable State the total sum of the payment to which

the individual was not entitled . . . .. Any provision of the applicable State law providing for waiver of recovery of overpayments or compensation shall not be applicable to SUA . . . ." (20 C.F.R. §§ 619.13(a) & (f).)

**3.** The previous regulations to which we referred in *Martinez* included unemployment insurance programs for federal employees 5 U.S.C. §§ 8501 *et seq.,* ex-servicemen, 5 U.S.C. §§ 8521 *et seq.,* the Federal-State Extended Unemployment Compensation Act of 1970, Title II of P.L. 91–373, 84 Stat. 695, 708, and the Emergency Unemployment Compensation Act of 1971, Title II of P.L. 92–224, 85 Stat. 810, 811. For each of these programs the Secretary of Labor provided for waiver of overpayments pursuant to applicable state law. (*Martinez v. Marshall, supra,* 573 F.2d at 558–59.)

Section 618.15 is invalid for the same reasons that 20 C.F.R. § 619.13 was held invalid in *Martinez*. As we noted in *Martinez*, both regulations are inconsistent with previous regulations of the Secretary of Labor permitting waiver of recoupment in a variety of unemployment insurance programs. Like the regulation stricken in *Martinez*, 20 C.F.R. § 618.15 conflicts with the congressional command to apply state law in states, like California, with statutes permitting waiver of recoupment. The Emergency Unemployment Compensation Act of 1974, provides that state law shall apply "except where inconsistent with the provisions of this Act or regulations of the Secretary promulgated to carry out this Act . . ." (Section 102(d)(2), P.L. 93–572, 88 Stat. 1869.) The reference to "regulations of the Secretary promulgated to carry out this Act," does not indicate that Congress intended to give the Secretary authority to override state law in circumstances where the Act itself is not inconsistent with state law. The direction that state law shall apply would have little meaning if the Secretary had unbridled authority to suspend the application of a state law that is not inconsistent with anything in the balance of the Act. There is no indication that Congress intended to prohibit waiver of recoupment of FSB overpayments when it enacted the Emergency Unemployment Compensation Act of 1974. Indeed, in 1977 Congress amended the program expressly to permit waiver on a nationwide basis. (Emergency Unemployment Compensation Extension Act of 1977, P.L. 95–19, 91 Stat. 39.) We recognized in *Martinez* that the Secretary's authority to promulgate regulations to carry out the purposes of a congressional program does not permit the enforcement of regulations that are themselves inconsistent with the legislative purpose. Because the Secretary's regulations barring waiver are inconsistent with the legislative purpose of the Emergency Unemployment Compensation Act, the district court properly invalidated 20 C.F.R. § 618.15.[4]

## II

Plaintiffs appeal from the district court's denial of their motion for attorneys' fees. On February 14, 1977, plaintiffs filed a motion for attorneys' fees pursuant to the Civil Right Attorney's Fee Awards Act of 1976, 42 U.S.C. § 1988. This section provides that "[i]n any action or proceeding to enforce a provision of . . . [42 U.S.C. §] 1983 . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." (42 U.S.C. § 1988.) The district court denied the motion for attorneys' fees because it held that plaintiffs had not made out a claim under 42 U.S.C. § 1983. The court further held that it had no authority to award attorneys' fees to plaintiffs under its equitable powers because their action did not fall within the narrow "common fund" or "common benefit" exceptions to the rule of *Alyeska Pipeline Service Co. v. Wilderness Society* (1975) 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141.

Section 1983 of Title 42, U.S.Code, provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects,

---

4. Congress' failure to amend the Emergency Unemployment Compensation Act in 1975 to permit waiver expressly does not suggest that Congress approved the Secretary's regulation by its silence. While Congress did amend the Emergency Jobs and Unemployment Assistance Act on June 30, 1975, to permit waiver with regard to SUA overpayments, there is no indication that Congress knew that the Secretary had barred waiver of recoupment of FSB overpayments. Indeed, the legislative history of the 1977 amendments to the Emergency Unemployment Compensation Act indicates that Congress believed that the waiver question previously was governed by state law. (*See* 123 Cong.Rec. H 2913 (remarks of Congressman Corman, April 4, 1977) ("Under the present statute, waiver is permitted only in those States which have State law waiver provisions applicable in their regular unemployment insurance program.").) The fact that the 1977 amendments were not retroactive and Congress' awareness that they would change the law relative to recoupment is not inconsistent with this conclusion because the 1977 amendments permitted waiver for the first time even in states without laws authorizing it.

or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

To state a claim for relief under section 1983, a plaintiff must demonstrate two elements: (1) that "the defendant was acting under color of state law at the time the acts complained of were committed," and (2) that "the defendant deprived plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." (*Briley v. California* (9th Cir. 1977) 564 F.2d 849, 853.)

The district court held that plaintiffs had not stated a claim under section 1983 because they had not met the state action requirement and because they had not raised a "substantial" constitutional claim under the test of *Hagans v. Lavine* (1974) 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577. The court held that there was no state action because "this case is a suit attacking a federal regulation as contrary to statute" and "the state is here simply implementing the federal regulations as it was obliged to do." The district judge apparently thought that the "color of state law" requirement could be satisfied only when state law was being implemented by state authorities.

■ The "color of state law" requirement of section 1983 "has consistently been treated as the same thing as the 'state action'" requirement of the Fourteenth Amendment. (*United States v. Price* (1966) 383 U.S. 787, 794 n. 7, 86 S.Ct. 1152, 16 L.Ed.2d 267; *Briley v. California, supra,* 564 F.2d at 855; *Ouzts v. Maryland National Insurance Co.* (9th Cir. 1974) 505 F.2d 547, 550 (en banc).) Courts applying the "color of state law" requirement have indicated that the relevant inquiry focuses not on whose law is

being implemented, but rather on whether the authority of the state was exerted in enforcing the law. (*United States v. Classic* (1941) 313 U.S. 299, 326, 61 S.Ct. 1031, 85 L.Ed. 1368; *Green v. Dumke* (9th Cir. 1973) 480 F.2d 624, 628–29.) Thus, the actions of state agencies administering federally-funded programs have been held to be actions undertaken under color of state law for the purposes of section 1983. (*Green v. Dumke, supra,* 480 F.2d at 628.)

■ The state officials who sought to recover these FSB overpayments were empowered to act only by virtue of their authority under state law. (Calif. Unemployment Ins. Code §§ 301 *et seq.* & 401 *et seq.*) Thus, the state defendants were acting "under color of state law" within the meaning of section 1983. (*Cf. Lidie v. California* (9th Cir. 1973) 478 F.2d 552 (state implementation of federally-approved regulations for administering federal food stamp program is "state action" within the meaning of section 1983).)

Because plaintiffs satisfied the first element for stating a claim under section 1983, we must consider whether they met the second element for such a claim by seeking to vindicate rights "secured by the Constitution or laws of the United States." (*Briley v. California, supra,* 564 F.2d at 853.) In their complaint, plaintiffs alleged two bases for relief: a statutory claim based on the alleged conflict between the Secretary's regulation and the terms of the Emergency Unemployment Compensation Act of 1974, and a constitutional claim based on the equal protection clause of the Fourteenth Amendment. In determining whether plaintiffs had stated a claim for relief under section 1983, the district court only considered whether plaintiffs' constitutional claim was substantial enough to meet the requirements of *Hagans v. Lavine, supra.*[5] Because section 1983 indisputably embraces claims based on deprivations of constitutional rights, there is no question that plain-

---

**5.** In *Hagans v. Lavine* (1974) 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577, the Supreme Court held that if a constitutional claim was of sufficient substance to support federal jurisdiction, a district court as a matter of pendent jurisdic-

tion could hear a claim of conflict between federal and state law without deciding whether the statutory claim was supported by an independent basis of jurisdiction.

tiffs would have stated a claim for relief under section 1983 if they raised a substantial constitutional claim. However, the district court held plaintiffs' equal protection claim to be too insubstantial to form the basis for a 1983 action.

On appeal, the plaintiffs contest the district court's holding that their constitutional claim was insubstantial, and they also argue that their action states a claim under section 1983 because it seeks to redress a deprivation of federal statutory rights. By its terms, section 1983 applies to actions to redress deprivations of rights "secured by the Constitution *and laws* . . . ." If plaintiffs' statutory argument is correct, we need not decide the substantiality of their constitutional claim. Thus, we must consider whether section 1983 provides a cause of action for deprivations of the kind of statutory rights involved in this case.

The Supreme Court has not defined the extent to which 42 U.S.C. § 1983 provides a cause of action for deprivations of federal statutory rights. In *Chapman v. Houston Welfare Rights Organization* (1979) —— U.S. ——, 99 S.Ct. 1905, 60 L.Ed.2d 508, a decision construing the jurisdictional counterpart of section 1983, 28 U.S.C. §§ 1343(3) & (4), the Supreme Court discussed the scope of section 1983 in the context of a suit to redress an alleged conflict between state welfare regulations and the Federal Social Security Act. Four members of the Court expressed the view that section 1983 provided a cause of action to redress a deprivation of the kind of federal statutory rights involved in the case. (*Chapman v. Houston Welfare Rights Organization, supra,* —— U.S. at ——, 99 S.Ct. 1905 (White, J., concurring in judgment), ——, 99 S.Ct. 1905 (Stewart, J., dissenting).) Three members of the Court were of the opinion that section 1983 did not provide a cause of action for the deprivation of such statutory rights. (*Chapman v. Houston Welfare Rights Organization, supra,* —— U.S. at ——, 99 S.Ct. 1905 (Powell, J., concurring).) Two members of the Court did not reach the issue because they held, for the plurality, that even if section 1983 provided a cause of action, there was no jurisdiction under 28 U.S.C. § 1343(3) or (4).[6]

Although the Supreme Court's holding in *Chapman* means that jurisdiction over plaintiffs' action cannot be founded on 28 U.S.C. §§ 1343(3) & (4), jurisdiction was still proper under 28 U.S.C. § 1361 (mandamus jurisdiction). (*Martinez v. Marshall, supra,* 573 F.2d at 558 (upholding mandamus jurisdiction in virtually identical action); *cf. Califano v. Yamasaki* (1979) —— U.S. ——, ——, 99 S.Ct. 2545, 61 L.Ed.2d 176 (declining to reach question of mandamus jurisdiction where jurisdiction provided by Social Security Act).)[7] Thus, we must

---

**6.** Title 28, U.S.Code, §§ 1343(3) & (4) provide: "The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person: . . . (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States. (4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote."

In *Chapman* the Supreme Court held that because a suit to redress an alleged conflict between state welfare regulations and the Federal Social Security Act was not a suit based on a statute providing for equal rights or for the protection of civil rights, there was no jurisdiction under sections 1343(3) & (4). The court majority did not reach the question whether section 1983 provided a cause of action for such a suit, although four members of the Court indicated that they would answer that question in the affirmative, while three members of the Court indicated that they would give a negative answer to that question.

**7.** In their complaint, plaintiffs asserted jurisdiction under 5 U.S.C. §§ 702 and 706, 28 U.S.C. § 1337, 28 U.S.C. §§ 1343(3) & (4), and 28 U.S.C. § 1361. As we recognized in *Martinez v. Marshall* (9th Cir. 1977) 573 F.2d 555, 558, jurisdiction in a suit such as this cannot be premised on 5 U.S.C. §§ 702 and 706, in light of *Califano v. Sanders* (1977) 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192. The Supreme Court's decision in *Chapman v. Houston Welfare Rights Organization* (1979) —— U.S. ——, 99 S.Ct. 1905, 60 L.Ed.2d 508, indicates that in the absence of a substantial constitutional claim jurisdiction would not lie under 28 U.S.C. §§ 1343(3) & (4). Because of our holding in *Martinez* that mandamus jurisdiction under 28

determine whether section 1983 provides a cause of action for plaintiffs' statutory claim.

Although the Supreme Court has yet to define the extent to which section 1983 provides a cause of action for deprivations of statutory rights, the issue is not an unfamiliar one. The question has been the subject of considerable scholarly comment.[8] Three Circuits have held that 1983's reference to rights "secured by the Constitution *and laws*" is to be taken literally to mean that the section provides a cause of action for deprivations of federal statutory rights. (*Blue v. Craig* (4th Cir. 1974) 505 F.2d 830; *Gomez v. Florida State Employment Service* (5th Cir. 1969) 417 F.2d 569; *Bomar v. Keyes* (2d Cir. 1947) 162 F.2d 136.) The Supreme Court has meticulously recounted the legislative history of section 1983 on a number of occasions (*Chapman v. Houston Welfare Rights Organization, supra*; *Examining Board of Engineers v. Flores de Otero* (1976) 426 U.S. 572, 96 S.Ct. 2264, 49 L.Ed.2d 65; *Lynch v. Household Finance Corp.* (1972) 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424; *Monroe v. Pape* (1961) 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492) and two views have emerged about the scope of the section's protection of statutory rights. One view holds that the plain language of the statute indicates that a cause of action is provided for deprivations of any federal statutory rights. (*Chapman, supra* (White, J., concurring in judgment).) The other view is that section 1983 was intended to be only as broad as its jurisdictional counterpart, 28 U.S.C. § 1343(3), which is limited to actions claiming a deprivation of rights "secured by . . . any Act of Congress providing for equal rights." (*Chapman, supra* (Powell, J., concurring).)

A meticulous review of the legislative history of section 1983 convinces us that the former view is correct. Because we are venturing on such well-trod terrain, it is unnecessary for us to give a detailed repetition of the legislative history of section 1983. "Anyone who ventures into the thicket of the legislative history of § 1983 quickly realizes that there is no clearly marked path to the correct interpretation of this statute." (*Chapman, supra*, —— U.S. at ——, 99 S.Ct. at 1919 (Powell, J., concurring).) In these circumstances, we think that the clearest indication of the intended scope of section 1983 is the language of the statute itself. (*See Smith v. Califano* (9th Cir. 1979) 597 F.2d 152, 155.)

Section 1983 is derived from section 1 of the Civil Rights Act of 1871. This section provided a private civil cause of action to redress the deprivation, under color of state law, of rights "secured by the Constitution of the United States." When Congress adopted the Revised Statutes of 1874, the words "and laws" were added to section 1 of the Civil Rights Act of 1871, which became section 1979 of the Revised Statutes. While we recognize that Congress provided scant indications of the reasons for this change, we cannot ignore the plain meaning of the language Congress employed. (*Cf. Examining Board of Engineers v. Flores de Otero* (1976) 426 U.S. 572, 96 S.Ct. 2264, 49 L.Ed.2d 65 (unexplained addition of the words "or Territory" in 1874 revision accorded its plain meaning).) Moreover, "[t]he conclusion that § 1983 provides a remedy for deprivations under color of state law for federal statutory as well as constitutional rights not only reflects a straightforward and natural reading of its language, but is supported by [Supreme Court decisions] that have assumed or indicated in dicta that this is the correct construction of the provision [*Monell v. New York City Dept. of Social Services* (1978) 436 U.S. 658, 700–701, 98 S.Ct. 2018, 56 L.Ed.2d 611; *Edelman v. Jordan* (1974) 415 U.S. 651, 675, 94 S.Ct. 1347, 39 L.Ed.2d 662; *Mitchum v. Foster* (1972) 407 U.S. 224, 239–

---

U.S.C. § 1361 was proper in suits such as this, we need not decide whether jurisdiction also existed under 28 U.S.C. § 1337 (jurisdiction over acts regulating commerce).

8. *See, e.g.,* Note, "The Propriety of Granting a Federal Hearing for Statutorily Based Actions Under the Reconstruction-Era Civil Rights Acts: *Blue v. Craig,*" 43 Geo.Wash.L.Rev. 1343 (1975).

240, n. 30; *Lynch v. Household Finance Corp.* (1972) 405 U.S. 538, 543 n. 7, 92 S.Ct. 1113, 31 L.Ed.2d 424], as well as by [Supreme Court] decisions giving the same construction to the post-Civil War statutes criminalizing invasions of federal rights in language almost identical to that found in § 1983 [18 U.S.C. §§ 241 & 242]." (*Chapman, supra,* —— U.S. at ——, 99 S.Ct. at 1932 (White, J., concurring in judgment).) Thus, we hold that section 1983 provides a cause of action to redress deprivations of federal statutory rights of the kind alleged by plaintiffs.[9] Because plaintiffs' statutory claim stated a claim for relief under section 1983, we need not decide whether the district court was correct in holding plaintiffs' constitutional claim to be too insubstantial to state a cause of action under section 1983.

■ Because plaintiffs stated a claim under section 1983, the district court had discretion to award plaintiffs attorneys' fees under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988. Thus, we vacate the district court's denial of plaintiffs' motion for attorneys' fees and remand that portion of the case to the district court for consideration of whether attorneys' fees should be awarded.

The judgment of the district court on the merits is affirmed. The district court's denial of plaintiffs' motion for attorneys' fees is vacated and remanded.

---

**9.** We reject cross-appellees' arguments that the rights plaintiffs seek to vindicate are not federal rights. The statutory rights plaintiffs seek to vindicate are created by section 102(d)(2) of the Emergency Unemployment Compensation Act of 1974, a federal law which commands states to apply their own unemployment insurance law in administering the Federal Supplemental Benefits program. Cross-appellees' argument that plaintiffs' action cannot be brought under section 1983 because it is a claim for monetary rights rather than for personal liberty rights was laid to rest in *Lynch v. Household Finance Corp.* (1972) 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424.