366 F.2d 544
 Charles MULRY, Leonard Polonsky, Irvin Fishman, Lawrence Lee, Carmen Yuppa and Robert Barrett, Appellants,
v.
William DRIVER, Administrator of the Veterans Administration, et al., Appellees.
 No. 20514.
 United States Court of Appeals Ninth Circuit.
 September 15, 1966.
 Rehearing Denied October 26, 1966.
 
 Abraham Gorenfeld, Los Angeles, Cal., for appellants.
 John W. Douglas, Asst. Atty. Gen., Morton Hollander, Robt. V. Zener, Attys., Dept. of Justice, Washington, D. C., Manual L. Real, U. S. Atty., Los Angeles, Cal., for appellees.
 Before POPE, JERTBERG and ELY, Circuit Judges.
 POPE, Circuit Judge.
 
 
 1
 The appellants brought suit in the court below for the purpose of obtaining judicial review of certain orders and regulations by the defendant Administrator of the Veterans Administration, seeking an adjudication that such regulations are void and unenforceable, and praying for an injunction against the Administrator and those associated with him restraining them from enforcing the same against the plaintiffs.[1]
 
 
 2
 The complaint alleges that plaintiffs are employed or appointed as resident physicians at the Long Beach Veterans Hospital; that each of them holds a degree as doctor of medicine or osteopathy from an approved college university; that each has completed an internship satisfactory to the administrator; and that each is licensed to practice medicine, surgery, or osteopathy in a state.[2] The order and regulation primarily complained of provides that physicians, dentists and nurses appointed in the manner in which plaintiffs have been appointed, are employed on a full time basis for twenty-four hours a day, seven days a week, and are, therefore, prohibited from engaging in extra-veterans administration professional activities for remuneration. The order or regulation in its entirety is set forth in the margin.[3]
 
 
 3
 Although the United States was not made a defendant in the action, the United States Attorney filed a motion to dismiss which recited: "The defendant, United States of America, by and through the undersigned, moves the court to dismiss the within action," etc. The ground for the motion was that the court lacked jurisdiction over the subject matter and that the complaint failed to state a claim. The district court, treating the motion as a "motion of defendants to dismiss the complaint" granted dismissal reciting that "this action is in effect one brought against the United States without its consent, and this court lacks jurisdiction thereof." The plaintiffs, as appellants here, then brought this appeal.[4]
 
 
 4
 We are of the opinion that the reasons given by the trial court for lack of jurisdiction are not sound. Title 5 U.S.C. Sec. 1009 expressly provides for review of administrative or agency action at the instance of "any person suffering legal wrong" because of such action "or adversely affected or aggrieved by such action" subject to certain exceptions stated in that section. Instead of reaching a conclusion that the action was "in effect one brought against the United States without its consent", the court should have made inquiry whether the action was one authorized by the section referred to above. If so, the necessary consent of the United States will be found to exist.
 
 
 5
 Plaintiffs' complaint seeks to bring them within the purview of Sec. 1009 of the Administrative Procedure Act, supra. It alleges that plaintiffs have been adversely affected or aggrieved by the action of the Veterans Administration in adopting and undertaking to enforce the regulation above mentioned; that as licensed physicians they have the right to practice medicine outside and independent of the Veterans Administration Hospital during their spare time and with non-veteran patients, and that to deny them this right would constitute a deprivation of their liberty and property without due process of law; that the regulation in question deprives them of the equal protection of the law by imposing on them unreasonable and arbitrary restrictions, and that the regulation is arbitrary, unreasonable and capricious.
 
 
 6
 The complaint further alleges that the regulation here sought to be enforced against the plaintiffs adversely affects them and aggrieves them in that their salaries, which they allege were fixed by the administrator pursuant to authority granted by Title 38 Sec. 4108 U.S.C., are so low that the plaintiffs, many of whom are married and have families, are unable to support themselves and their families under minimum standards of living and therefore, in order to supplement their salaries, they are compelled to engage in medical practice outside of the hospital, a practice which is referred to as "moonlighting".[5]
 
 
 7
 In order to arrive at a conclusion as to whether the administrative regulation here under attack is subject to court review under the Administrative Procedure Act, or otherwise, or whether, in case it is so reviewable, the regulation is of such nature and substance as to permit a court to set it aside or modify it, it is necessary to examine the various statutes relating to powers of the administrator and the rights of the persons employed in the capacity in which these appellants claim to operate.
 
 
 8
 The applicable statutes to which we must now refer are a veritable patch-work of enactments. Sec. 4104 Title 38 U.S.C., dealing with the Veterans Administration and its department of medicine and surgery, provides for appointment by the administrator of physicians, dentists and nurses in such number as he may find necessary for the medical care of veterans. Section 4105 describes the qualifications of such appointees in the language previously mentioned. (See footnote 2, supra.) Section 4106 provides that initial appointments after the establishment of necessary qualifications shall be for a probationary period of three years. Section 4106 also provides for subsequent promotions of such physicians. Section 4107 provides for various grades and pay scales for each. (The physicians' schedule, as amended in 1965, provides for pay ranging from a minimum of $8,961 to a maximum of $25,043 per year.)
 
 
 9
 Subchapter I of Chapter 18 Title 5 U.S.C., relating to employees of the executive branch of the government, provides that subject to certain exceptions specified in Sec. 902 Title 5, all civil officers and employees under the executive branch of the government shall be governed by the provisions of subchapter II and III (Secs. 911 to 922 Title 5). That provides that all such officers and employees shall be compensated for all hours of employment in excess of 40 hours in any administrative work week. It specifies the rates of overtime pay. Sec. 944 of Title 5, which applies also to such employees, provides that they shall have a basic administrative work week of 40 hours. Section 902 Title 5 lists the types of employees who are not covered by those provisions of the sections last mentioned and listed among those persons are "student nurses, medical or dental interns, residents-in-training, student dieticians, student physical therapists, and student occupational therapists."
 
 
 10
 Section 902 indicates that those exempted from coverage are in student or training status. So far as the complaint here shows none of the appellants has that status. In fact, the listing of persons in student or training status as exempt from the coverage previously mentioned, would indicate that an employed physician no longer in training or student status would, so far as these sections are concerned, come within the coverage of subchapters II and III mentioned above.
 
 
 11
 The important statute here is Section 4108 Title 38 U.S.C., which provides as follows: "Notwithstanding any law, Executive order, or regulation, the Administrator shall prescribe by regulation the hours and conditions of employment and leaves of absence of physicians, dentists, and nurses."[6]
 
 
 12
 It is obvious that the question here is whether in view of the provisions of this section, the contested administrative regulation is subject to judicial review. When we turn to the provisions of Sec. 10 of the Administrative Procedure Act (Title 5 U.S.C. Sec. 1009), we find language not easy to apply in a case of this character. Thus in subdivision (c) of that section, it is provided that "Every agency action made reviewable by statute and every final agency action for which there is no other adequate remedy in any court shall be subject to judicial review." Subdivision (e) of that section provides that the reviewing court in addition to deciding relevant questions of law, interpreting statutory provisions, and determining the meaning of agency action, may hold unlawful and set aside agency action found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."
 
 
 13
 A reading of the whole section in the light of its legislative history,[7] would indicate that the section contemplated that generally speaking agency action would be subject to judicial review. It has been said that the more recent decisions of the Supreme Court are consistent with the idea that there is "a presumption of reviewability that may be rebutted by affirmative indication of legislative intent in favor of unreviewability, or by some special reason for unreliability growing out of the subject matter or the circumstances."[8]
 
 
 14
 On the other hand, it is important to note that the section of the Administrative Procedure Act, here referred to, begins with an exception listing circumstances which prevent judicial review. This language is as follows: "Except so far as (1) statutes preclude judicial review or (2) agency action is by law committed to agency discretion * * *", meaning that in such cases judicial review may not be had.
 
 
 15
 We have concluded that it is unnecessary for the purposes of our decision in this case to determine whether the regulation here involved and the action of the Administrator with respect thereto is subject to judicial review or whether it is action "committed to agency discretion" within the meaning of the excepting language just quoted. Assuming for the purposes of this case that the action of the Administrator in adopting the regulation is subject to judicial review, we must note that in such cases of judicial review there are strict limitations upon the power of the reviewing court to substitute its judgment for that of the administrative agency. Of course in such a review it is a proper function of the reviewing court to ascertain whether the agency has exceeded its statutory powers or has complied with certain legal requirements. But where the agency has acted within the scope of its delegated authority, the power of a court to upset the decision of the administrative body is very limited.
 
 
 16
 This is true whether the court be reviewing what may be called an administrative adjudication or whether it is reviewing the action of the agency in adopting rules or regulations. The leading case in point is Gray v. Powell, 314 U.S. 402, 411, 62 S.Ct. 326, 332, 86 L.Ed. 301, where the Court said: "In a matter left specifically by Congress to the determination of an administrative body * * * the function of review placed upon the courts * * * is fully performed when they determine that there has been a fair hearing, with notice and an opportunity to present the circumstances and arguments to the decisive body, and an application of the statute in a just and reasoned manner." This and other cases to the same effect are cited with quotations in Southwestern Electric Power Co. v. Federal Power Com'n, 5 Cir., 304 F.2d 29, (cert. denied Alabama Power Co. v. Federal Power Commission, 371 U.S. 924, 83 S.Ct. 292, 9 L.Ed.2d 232, particularly in the text and footnotes at page 42. In that case, as here, the administrative agency was adopting a rule representing a certain administrative policy. The court quoting from American Power & Light Co. v. S.E.C., 329 U.S. 90, 112, 67 S.Ct. 133, 91 L.Ed. 103, held that "the relation of remedy to policy is peculiarly a matter for administrative competence." When the review relates to the action of the agency in making a rule or regulation Professor Davis has noted that "The Supreme Court has consistently held that judicial judgment should not be substituted for administrative judgment on questions within the agency's statutory power of rule making." Davis, Administrative Law Treatise, Vol. 4 § 3010.[9]
 
 
 17
 It is plain in this case that § 4108, supra, granted to the Administrator the general power to prescribe by regulation the hours and conditions of employment and leaves of absence of physicians. The policy inherent in this authorization is of course to secure the greatest possible efficiency and care in looking after the inmates of veterans hospitals. It is unnecessary to adduce any evidence to disclose what are necessarily the facts in respect to the operation of such hospitals. These facts are as follows:
 
 
 18
 (1) The hospitals necessarily contain a great number of patients, veterans who are entitled by law to hospital care and treatment.
 
 
 19
 (2) Those patients necessarily require care around the clock and, as in all hospitals, emergencies are likely to arise at midnight as well as at noon.
 
 
 20
 (3) If a doctor resident is away at some other hospital in the midst of performing an appendectomy upon a private patient, he is not available for immediate attention to a critical case in the veterans hospital. Whether these doctors, performing their residencies' services in the veterans hospitals, ought to be subject to instant call and immediate service, is a question of policy.
 
 
 21
 Now, if we were to remand this case with directions to entertain the application for review of the Administrator's action in adopting this regulation, there is only one thing which the district court could decide and that would be that in adopting this regulation there was a rational basis for the conclusions of the Administrator and warrant in the record for his judgment. Under no conceivable circumstance could the district court on such a remand be justified, no matter how much the court disagreed with the Administrator, in setting aside or nullifying the Administrator's policy decision.
 
 
 22
 Accordingly we find no occasion for remanding the cause with directions to review the Administrator's action in prescribing this regulation. For this reason, though it differs from that assigned by the district court, the action must be dismissed.
 
 
 23
 It is so ordered.
 
 
 
 Notes:
 
 
 [1]
 The complaint asserts that this is a class action on behalf of the named plaintiffs and all resident physicians at the Long Beach Veterans Hospital, Long Beach, California
 
 
 [2]
 The last mentioned allegation uses the language of Title 38 U.S.C. Sec. 4105, which provides in part as follows:
 "Any person to be eligible for appointment in the Department of Medicine and Surgery must —
 (1) be a citizen of the United States;
 (2) in the Medical Service —
 hold the degree of doctor of medicine or of doctor of osteopathy from a college or university approved by the Administrator, have completed an internship satisfactory to the Administrator, and be licensed to practice medicine, surgery, or osteopathy in a State; * * *."
 
 
 [3]
 Outside Professional Activities of Full-Time Physicians, Dentists, Nurses, Residents and Interns. Physicians, dentists and nurses appointed under the authority of Title 38 U.S.C. 4104(1) are employed on a full-time basis for 24 hours a day, 7 days per week. Such personnel are, therefore, prohibited from engaging in extra-VA professional activities for remuneration. This prohibition equally applies to residents and interns appointed under the authority of Title 38 U.S.C. 4114(b). Defined below are certain specific terms and conditions relating to extra VA professional activities which are prohibited or may be permitted in keeping with the above requirement.
 
 
 [1]
 Prohibited Activities
 (a) Private practice.
 
 
 [1]
 Office practice
 
 
 [2]
 Consultation practice with remuneration
 
 
 [3]
 Other conventional medical practice
 (b) Private practice equivalents for purpose of Department of Medicine and Surgery employment.
 
 
 [1]
 Accepting financial remuneration,directly or indirectly, for rendering a professional, scientific, technical or administrative service related to their profession, including, teaching, from:
 a. Another physician, dentist or from any hospital or clinic, including those associated with the VA through a Deans Committee relationship or otherwise;
 b. A commercial concern, such as insurance company, surgical instrument, pharmaceutical or drug firm or manufacturer, dry goods store, hotel, etc.;
 c. An industrial concern, such as a coal mine, chemical plant or industry, steel plant, etc.;
 d. Teaching in a medical school or other educational institution, including one affiliated with the VA hospital in which the individual is employed and including not only teaching in undergraduate, graduate and post-graduate instruction or in the administration of such instruction, but also the instruction and administration of instruction in refresher courses, courses for technicians, etc.;
 e. "Running" or directing a laboratory or clinic such as:
 (1) X-Ray laboratory or clinic
 (2) Clinical pathology laboratory
 (3) Bacteriology laboratory
 (4) Pulmonary function laboratory
 (5) Radioisotope laboratory
 (6) Radioisotope clinic, etc.
 or serving as a consultant to such laboratories
 
 
 [2]
 When not accepting financial remuneration, directly or indirectly:
 a. When (except as a teacher) this practice serves to take the place of a physician who would otherwise have to perform the service rendered, particularly in situations such as are cited in subparagraphs a, b, c and e above.
 b. When such action might result in:
 (1) Impairing the efficiency of the VA employee in his job;
 (2) Being construed as official acts of the VA when it is done by an individual in a private capacity;
 (3) Criticism of or embarrassment to, the VA.
 
 
 [2]
 Permitted Practices
 (a) Acceptance of non-monetary awards.
 (b) Acceptance of a reimbursement for actual expenses incurred in delivering lectures, etc.
 (c) Consultation. (An advisory professional opinion in isolated instances involving a single patient without remuneration or responsibility for medical care).
 (d) Performing emergency services without remuneration to those involved in an accident or other bona fide emergency. Auth.D. M&S Suppl. MP-5, Chap. 16-B, chg. 3, Para. 2.04d., pages 2-4.
 
 
 [4]
 The complaint also attacked a regulation of the Administrator, described as Sec. 204.06, reading as follows: "All testimony given during an investigation conducted by the Investigation Service is for the use of the Administrator and his staff, except as provided in paragraphs 205.02f and 205.04 and will not be disclosed to unauthorized persons within or without the Veterans Administration. All employees will refrain from discussing matters under investigation during the investigation or after its completion." There is no allegation that this regulation has been, or is about to be enforced against these plaintiffs. Therefore they are not shown to have standing to attack it, and we therefore do not discuss it further
 
 
 [5]
 The salary scales set forth in the complaint, the truth of which we are obliged to accept for purposes of this appeal, would appear to be low for a graduate physician, ranging from $4325 to $7715 per annum. We have some difficulty, however, in reconciling the compensation which appellants allege they are receiving with the statutory provisions which fix the salary for physicians employed by the Veterans Administration. Section 4107 Title 38 U.S.C. lists much higher grades and rates of compensation. An amendment of that section, approved July 18, 1966, provides for even higher pay schedules
 
 
 [6]
 Were the matter presented here it might be a nice question whether that section authorized the administrator to fix the salary scales of physicians employed as resident physicians such as these appellants. The question is: does "conditions of employment" include "salary scale"? That question is not presented here as the complaint alleges that the defendant Administrator fixed the alleged salary scale "pursuant to authority granted by Sec. 4108 of Title 38 U.S.C."
 
 
 [7]
 A rather full discussion of the legislative history is to be found in Davis, Administrative Law Treatise, § 28.08, Vol. 4, pp. 38 and 39
 
 
 [8]
 The quoted language is taken from Davis, Administrative Law Treatise, Vol. 4, p. 31
 
 
 [9]
 Cited as "typical" is National Broadcasting Co. v. United States, 319 U.S. 190, 224, 63 S.Ct. 997, 1013, 87 L.Ed. 1344, where the Court said: "We conclude, therefore, that the Communications Act of 1934 authorized the Commission to promulgate regulations designed to correct the abuses disclosed by its investigation of chain broadcasting. There remains for consideration the claim that the Commission's exercise of such authority was unlawful
 "The Regulations are assailed as `arbitrary and capricious.' If this contention means that the Regulations are unwise, that they are not likely to succeed in accomplishing what the Commission intended, we can say only that the appellants have selected the wrong forum for such a plea. What was said in Board of Trade v. United States, 314 U.S. 534, 548 [62 S.Ct. 366, 372, 86 L.Ed. 432], is relevant here: `We certainly have neither technical competence nor legal authority to pronounce upon the wisdom of the course taken by the Commission.' Our duty is at an end when we find that the action of the Commission was based upon findings supported by evidence, and was made pursuant to authority granted by Congress. It is not for us to say that the `public interest' will be furthered or retarded by the Chain Broadcasting Regulations. The responsibility belongs to the Congress for the grant of valid legislative authority and to the Commission for its exercise."