CENTRAL WASHINGTON HEALTH SERVICES ASSOCIATION, a Washington Corporation, Plaintiff,

v.

Patricia Roberts HARRIS, Secretary of Health and Human Services, Defendant.

No. C–79–248.

United States District Court, E. D. Washington.

Sept. 11, 1980.

James J. Gillespie, U. S. Atty. by Carroll Gray, Asst. U. S. Atty., Spokane, Wash., for Government.

Patrick E. McBride, Acting Regional Atty., for Dept. of Health and Human Services by P. K. Abraham, Asst. Regional Atty., Seattle, Wash., on brief.

Davis, Arneil, Dorsey, Knight & Parlette by David J. Dorsey and J. A. Johnson, Wenatchee, Wash., for plaintiff, with Lindsay, Hart, Neil & Weigler by Thomas E. McDermott, Portland, Or., on brief.

## MEMORANDUM OPINION AND ORDER

### ISSUES

QUACKENBUSH, District Judge.

The sole issue presented by this matter involves a determination as to whether or not the Plaintiff herein was the "sole community provider" of general acute hospital services in the Wenatchee, Washington community as the same relates to the Health Insurance for the Aged and Disabled Program commonly known as "Medicare". 42 U.S.C. § 1395 et seq.

### LEGISLATIVE BACKGROUND

In 1965, the Congress of the United States passed Public Law 89–97, Title XVIII of which has commonly become known as "Medicare". 42 U.S.C. § 1395. The foregoing statutes and the federal regulations adopted pursuant thereto provide for the payment by the United States Government of medical costs for the care of the aged and disabled. The providers of medical care are reimbursed for the "reasonable cost" of such medical care. 42 U.S.C. § 1395x(v)(1)(A).

In at least the matter of hospital care, a beneficiary under the Medicare Program may choose between the type and class of hospital which he or she elects, however, the Medicare Program reimburses the provider only for the "reasonable cost" thereof as determined by the Secretary of H.E.W., her

agents or designees, and the beneficiary is billed for any excess charges, over and above the "reasonable cost".

In 1972, Congress recognized that in a number of smaller communities where only one hospital "provided" the needed care existed, beneficiaries in fact had no choice between a non–existent "non–luxury" institution where Medicare would pay all of the beneficiary's expenses and the existing hospital whose charges and service were so-called "first–class", thus resulting in charges to the beneficiary in addition to those paid by Medicare. Senate Report 92–1230, Report of the Committee on Finance to accompanying H.R. 1, the Social Security Amendments of 1972 (3 U.S.Code Congressional & Administrative News 1972–pp. 5069–5070). The 1972 Amendments to the Medicare Act, however, prohibit a provider of services from imposing total charges to the patient and the medicare bureau in excess of costs actually incurred. 42 U.S.C. § 1395x(v)(1)(A).

In response to the 1972 Congressional enactments and the intent thereof, the Secretary of H.E.W., (now H.H.S.) promulgated and enacted certain regulations to exempt "sole community providers" from the limitations on costs. The portions of the regulations pertinent to this appeal are contained in 42 C.F.R. § 405.460(f)(4) which provide as follows:

"42 C.F.R. § 405.460(f)(4) provides an exemption as a sole community provider.

(f) *Exceptions, exemptions, and adjustments.* The following types of exceptions, exemptions and classification adjustments may be granted under this section but only upon the provider's demonstration that the conditions indicated are present:

(4) Exemption as sole community provider. The limitation on costs imposed under this section shall not be applicable where a provider by reason of factors such as isolated location or absence of other providers of the same type, is the sole source of such care reasonably available to beneficiaries."

As above indicated, a determination concerning the Plaintiff's status as a "sole community provider" (S.C.P.) in the Wenatchee, Washington community is the basis for this action.

In administering the Medicare program, the Government operates through fiscal "intermediaries" as authorized by 42 U.S.C. § 1395h(a). Such "intermediaries" are private organizations which operate through contracts with the Secretary of H.H.S. (formerly H.E.W.). The "intermediary" performs various functions for the Secretary or her delegate including review of cost reports, setting of "reasonable cost" figures, payment of estimated sums owing a provider on a monthly basis, and the making of determinations such as "sole community provider" status as herein involved. In this case, Blue Cross, Inc., of Washington and Alaska was the supervising "intermediary".

Decisions of an "intermediary" are appealable by a provider to the Provider Reimbursement Review Board (PRRB). 42 U.S.C. § 1395oo. The congressional enactment creating this Board mandated that the Board be composed of five members knowledgeable in the field of cost reimbursement, at least one of whom must be a certified public accountant. 42 U.S.C. § 1395oo (h).

A decision of the Provider Reimbursement Review Board is to be based upon the record made at the hearing and is to be supported by substantial evidence when the record is viewed as a whole. 42 U.S.C. § 1395oo (d).

The decision of the Board is a final order appealable by the provider to the United States District Court, unless the Secretary intervenes on her own motion. 42 U.S.C. § 1395oo (f)(1). The Secretary of H.E.W. (now H.H.S.) has delegated this intervention authority to the Administrator, Health Care Financing Administration (hereafter Administrator). 42 Fed.Reg. 44599, 44600.

The Administrator, in turn, has further assigned responsibility in these cases to an attorney–adviser who recommends initiation of "own–motion" reviews together with recommended disposition of the case. 41 Fed.Reg. 18900.

Appeal of the Administrator's (Secretary's) decision is to the United States District Court. 42 U.S.C. § 1395oo (f)(1).

## FACTUAL BACKGROUND

Prior to February 15, 1974, the Plaintiff was the owner and operator of a single facility hospital in Wenatchee, Washington known as Deaconess Hospital.

On February 15, 1974, the Plaintiff executed an Option Agreement for the purchase of the assets of St. Anthony's Community Hospital in Wenatchee, Washington.

Prior to the exercise of this option, the Plaintiff was required to obtain a "Certificate of Need" from the Washington State Department of Social and Health Services pursuant to Chapter 70.38 of the Revised Code of Washington. Chapter 70.38 of the Revised Code of Washington is a Comprehensive Health Planning Act passed by the Washington State Legislature in its 1971 Session to comply with the mandates of Public Law 89–749. 42 U.S.C. § 246.

Pursuant to the Plaintiff's application for a "Certificate of Need" for the purchase of St. Anthony's Hospital and consolidation of St. Anthony's Hospital with Deaconess Hospital, various meetings were held in which the public was given the opportunity to present their views in connection therewith. Likewise, notices of the application and hearings were published in the Wenatchee area newspapers and a Court hearing concerning the matter was held in the City of Wenatchee.

On April 29, 1974, the Washington State Department of Social and Health Services, Health Services Division, issued a "Certificate of Need" for the purchase of St. Anthony's Community Hospital by the Plaintiff. A "Notification of Action" of the issuance of the "Certificate of Need" was forwarded to the Regional Health Administrator, United States Department of Health, Education, and Welfare (H.E.W.). At the time of the issuance of the "Certificate of Need" by the Washington State Department of Social and Health Services, Dr. John A. Beare, the Director of said agency, stated by letter as follows:

"The consolidation of the two principal hospitals in Wenatchee will result in numerous operational advantages such as the elimination of duplication of basic medical and surgical services. Also the purchase will provide a greater base to support the addition of new and specialized services."

The Plaintiff then changed its name to Central Washington Health Services Association, completed the purchase of the St. Anthony Hospital assets and facilities which it designated as its Rosewood branch, and effective July 1, 1974, proceeded with the operational consolidation of the two facilities. The Plaintiff's plan, since accomplished, involved both a physical and operational consolidation of the two facilities into one physical unit. Physical consolidation involved the issuance of a 12 million dollar bond issue to finance the construction of additional facilities.

Effective July 1, 1974, a true consolidation of the two facilities (Deaconess and Rosewood) was effected by the Plaintiff and all operational aspects of administration, personnel, and medical facilities were integrated into one single operation as follows:

(1) The medical staff of St. Anthony's was dissolved and a combined medical staff was established. This medical staff thereafter served the patients at both facilities. (TR 124)

(2) The two facilities were operated under one personnel policy. The personnel were assigned to the two facilities based upon the need therefor. (TR 124 and 125)

(3) A single contract was negotiated with the Licensed Practical Nurses and Registered Nurses Association which was treated as one negotiating unit. (TR 124)

(4) The housekeeping in both facilities was performed by one single consolidated housekeeping staff. (TR 180)

(5) One single pharmacy was established to service both facilities (TR 194).

(6) The physical therapy departments were combined into one operation. (TR 127)

(7) The EKG Department was consolidated. (TR 127)

(8) The blood bank department was consolidated. (TR 127)

(9) The physical therapy department was consolidated. (TR 127)

(10) The kitchens of the two facilities were consolidated into one singular operation preparing food for both facilities.

(11) The accounting, bookkeeping, payroll, administration, and personnel departments were all consolidated into one singular operation. (TR 181)

(12) The laboratory work for both facilities was consolidated into one single unit at the Deaconess facility. (TR 178)

(13) The X–Ray Lab for both facilities was consolidated into one single unit at Deaconess. (TR 178)

(14) One income tax return was prepared and filed covering all operations of the two facilities as a singular unit. (TR 158)

(15) The consolidation of the two facilities was such that the Rosewood (formerly St. Anthony's) facility could not operate on an independent basis. (TR 128)

(16) The charges made to individual patients were the same regardless of the facility to which the patient was assigned. (TR 121, 126, 129, 130, 156)

Subsequent to the consolidation and integration of the two facilities as one operation, the Plaintiff faced the practical problem of the two former separate operations having different fiscal years. The former St. Anthony's Hospital (now Rosewood), had been operating on a fiscal year of July 1, through June 30. The Deaconess facility had been operating on a calendar year fiscal basis. The Plaintiff discussed the problem with Mr. Terry of Blue Cross, the Defendant's agent and intermediary. (TR 149) The intermediary informed the Plaintiff that they should prepare and file a separate cost report for the Rosewood facility (formerly St. Anthony's), for the period July 1, 1974 through December 31, 1974 (TR 151). As such, the Plaintiff filed two separate cost reports as directed by the intermediary,

one for Rosewood for the six month period of July 1, 1974 through December 31, 1974, and one for the Deaconess facility on its regular annual basis.

This matter is to be determined on the record produced at the Provider Reimbursement Review Board Hearing. The representative of the intermediary, Mr. Terry, testified at this hearing and did not in any manner deny the testimony of the Plaintiff's representative that he, Mr. Terry, had informed the Plaintiff that they should file separate reports under separate numbers.

Subsequent to the consolidation by the Plaintiff of the Deaconess and Rosewood facilities, the Plaintiff requested a determination by the intermediary that the Plaintiff was the only general long term acute hospital reasonably available to medicare beneficiaries in Wenatchee and requested a determination that the Plaintiff was the "sole community provider" in Wenatchee.

On February 9, 1976, the intermediary determined that in fact the Plaintiff was the sole community provider of general acute long term services in the Wenatchee area and in its letter to the Plaintiff stated as follows:

"We have reviewed your letter of November 10, 1975 requesting an exception to the 'Limitation on Coverage of costs under medicare' as imposed by Section 223, Public Law 92–603.

The following factors were considered:
1. The normal commuting distance to work for residents of the locality served by the hospital is an average of approximately 10 miles.
2. Cascade General Hospital of Leavenworth is 22.52 miles from Deaconess Hospital and has been granted an exemption from routine cost limitations as a 'sole community provider'. The only public transportation that exists between Leavenworth and Wenatchee is a three times daily Greyhound bus schedule.
3. Eye and Ear Hospital of Wenatchee is a special purpose facility as indicated by their name. The hospital deals mainly in eye, ear and throat care. Also, this fact is further emphasized in their service

code in the AHA Guide and their classification by the Washington State Hospital Commission.

4. Central Washington Health Services Association appears to be the sole source of general hospital services reasonably available to beneficiaries in the Wenatchee area.

Based on the above analysis, intermediary approval is hereby granted to Central Washington Health Services Association as a sole community provider under Regulation 405.460f(4) and in accordance with Part A, intermediary letter 74–22."

On September 22, 1976, the Defendant, the Department of Health, Education and Welfare, rescinded the intermediary's designation of the Plaintiff as the "sole community provider". HEW failed to distinguish between the Eye and Ear Hospital which, as hereinafter set forth, is a limited specialty hospital and the Plaintiff hospital, which is a general acute long term hospital. Clearly, the Eye & Ear Hospital of Wenatchee could not be the "sole community provider" as to the limited specialty services provided by that hospital if in fact the same services were available through the Plaintiff's facilities. On the other hand, the Eye and Ear Hospital clearly was not a general acute hospital providing services of the same type as provided by the Plaintiff.

42 CFR § 405.460(f)(4), specifies that the determination as to a "sole community provider" is based upon the "absence of other providers of the *same type*". A comparison of the Wenatchee Eye & Ear Hospital with the Plaintiff's hospital in Wenatchee unequivocally demonstrates that the two hospitals do not provide services of the *"same type"*.

The record in this case establishes the following concerning the Eye and Ear Hospital in Wenatchee, Washington:

(1) The American Hospital Association has designated the Eye & Ear Hospital as a specialty Hospital (TR 162). The Washington State Hospital Commission has designated the Eye and Ear Hospital as a specialty hospital. (TR 160)

(2) The Eye and Ear Hospital operates only 10 to 12 beds. (TR 143)

(3) The Eye and Ear Hospital does not provide general surgical services, gynecology services, neurological services, nor orthopedic services. (TR 145)

(4) Documents produced by the Health Services Administration from data collected from the Washington State Hospital Association establish 49 separate categories of services for Hospitals. The Eye & Ear Hospital provides only 2 of these 49 services and they provide only 2 other services by contract with other hospitals. (TR 144)

(5) The Plaintiff provides 28 or 29 categories of service at its facilities out of a maximum total of 49 service categories.

(6) The Eye and Ear Hospital will only admit an acute care patient in a "rare situation". (TR 170)

(7) The intermediary in this case made its own independent determination that the Eye and Ear Hospital was solely a specialty hospital. (TR 170)

(8) The Eye & Ear Hospital does not have an emergency room or provide emergency room services. (TR 182)

(9) The Eye and Ear Hospital has not handled a delivery (child delivery) within four years preceding the date of the hearing. No evidence is contained in the record as to the handling of child deliveries by the Eye and Ear Hospital at any time whatsoever.

Among the various services provided by the Plaintiff's facilities which are not supplied by the Eye & Ear Hospital are as follows:

(1) Medical surgery, (2) ICU, (3) Coronary surgery (CCU), (4) Medical acute care, (5) Psychiatric acute care, (6) Delivery room services, (7) EKG exams, (8) EMG Exams, (9) Respiratory therapy, (10) Physical therapy, (11) Burn intensive care, (12) Heart catheter services, (13) Neurological surgery, (14) Blood bank services, (15) Renal–dialysis, (16) Drug abuse care, (17) Alcoholism care, (18) Stroke care, (19) Intermediate care, (20) Emergency room services, (21) Trauma treatment emergency room, (22) Podiatric services, (23)

Urologic services, (24) Gynecological services, (25) Neurological services, (26) Orthopedic services, (27) Surgical day care, (28) Primary care, (29) Home nursing care, (30) Home physical medical care, (31) Poison information center, (32) Drug reactor information center, (TR 326–331).

Clearly the Eye and Ear Specialty Hospital is not of the *"same type"* as the Plaintiff's general acute long term facilities. Therefore, a finding or disallowance of the "sole community provider" exemption to Plaintiff by the Secretary of HEW, the Health Care Financing Administrator would be clearly erroneous and not based upon substantial evidence.

In the presentation of this matter to the Provider Reimbursement Review Board, the Defendant also contended that by reason of the location of Cascade Hospital at Leavenworth, Washington, the Plaintiff's facility was not the "sole community provider" in the Wenatchee, Washington area. The intermediary and the Defendant have in fact designated the Cascade Hospital in Leavenworth, Washington, itself, as a "sole community provider", thus recognizing that Medicare beneficiaries in the Cascade General Hospital service area do not have reasonable access to the Plaintiff's facilities in Wenatchee, Washington. Besides the apparent "equal protection" anomaly, it would follow that medicare patients in the Wenatchee area therefore do not have reasonable access to Cascade General Hospital in Leavenworth, Washington.

The decision of the Administrator included the following statement:

There was no evidence of unusual local circumstances to support the provider's request for an exemption from the cost limits as the sole community provider. The provider is not located in an area with extended periods of adverse weather or adverse topographical conditions. (TR 15).

This statement and finding is devoid of any basis whatsoever in the record in this case and in fact the record is clearly to the contrary. The record establishes that Leavenworth, Washington is located some 22

and one–half miles north and west of the Plaintiff's facilities. The road between Leavenworth, Washington (population approximately 1,500) and the greater Wenatchee area, (population approximately 38,000) (TR 139) goes up a river valley along the Wenatchee River. On some days, with fog, ice, or heavy snows, the road becomes impassable, or, in the words of a witness:

"On some days you just couldn't do it."

Likewise the only testimony in the record is that on some days it could taken an hour or an hour and one–half to drive between Leavenworth and Wenatchee.

In addition to the weather and road conditions between Leavenworth, Washington and Wenatchee, Washington, the Court feels it can take judicial notice of the location of these two communities within the State of Washington. (See also the maps of the area contained at TR 280, 321, 322). The two communities are located in north–central Washington on the eastern slope of the Cascades Mountain Range. They are surrounded by the Chelan National Forest. During the winter these communities receive a substantial amount of snow and become somewhat isolated (TR 320). The communities are located to the south of the world renowned North Cascades National Park which extends north to the Canadian border. This area contains high mountain peaks with elevations exceeding 10,000 feet, and glaciers compared favorably with the glaciers of Switzerland. To state that Wenatchee and Leavenworth, Washington are not located in relatively isolated areas, is to ignore the obvious geographic conditions and the contrary evidence in the record. (TR 139–142)

As further evidence that the Cascade Hospital in Leavenworth, Washington does not provide a reasonable alternative for medicare beneficiaries from Wenatchee, Washington the record establishes the following:

(1) The Cascade Hospital in Leavenworth is a type "1" hospital with only 18 to 20 beds (TR 142)

(2) The only public transportation between these two communities is the Greyhound line busses. There are two busses per day from Leavenworth to Wenatchee, one at 9:30 A.M. and one at 9:10 P.M. and three per day from Wenatchee to Leavenworth. The bus makes unscheduled stops plus a scheduled stop at Cashmere. The bus schedules are unreliable and during winter months, trips are cancelled due to snow and ice conditions. (TR 318, 141) (3) The Plaintiff's facilities serve 91% of the patients from the greater Wenatchee area. (TR 139) Plaintiff's facilities likewise serve 55% of the patients from the Leavenworth area. (TR 140) (4) The representative of the intermediary (Blue Cross) recognized that the application of the 25 mile guideline contended for by the Defendant was not appropriate in this case and stated that in granting the Leavenworth Cascade Hospital, the sole community provider status, he did not "split hairs" because Cascade Hospital was 22½ miles from the Wenatchee Hospital facilities rather than 25 miles. (TR 169, 143) (5) The Defendant's own Regulations (42 C.F.R. § 405.460(f)(4)) recognize that an alternative choice must be "reasonably available" to beneficiaries.

By reason of this undisputed testimony, the Administrator's findings and conclusions that the provider is not located in an area with extended periods of adverse weather or adverse topographical conditions is clearly erroneous. The evidence in the records is clearly to the contrary as found by the Board.

### AGENCY AND BOARD ACTION

1. On February 9, 1976, the Intermediary (Blue Cross) determined that the Plaintiff was the "sole community provider" in the Wenatchee area for the period in question. (TR 313).

2. On September 22, 1976, the Social Security Administration, Bureau of Health Insurance, Department of Health, Education and Welfare "rescinded" the sole community provider for both the Eye and Ear Hospital in Wenatchee and the Plaintiff's facilities. The Bureau of Health Insurance reasoned that the Eye and Ear Hospital was not entitled to the sole community provider status in view of the existence of the Plaintiff's facilities likewise being located in Wenatchee. The Bureau of Health Insurance then concluded that since the Eye and Ear Specialty Hospital was not entitled to sole community provider status, therefore Plaintiff was not entitled to sole community provider status. This conclusion is a non–sequitur inasmuch as the Plaintiff provided all of the services furnished by the Eye & Ear Specialty Hospital, however, the Eye and Ear Hospital, as above set forth, provided but 2 of the 29 services provided by the Plaintiff.

3. On October 12, 1976, the intermediary advised the provider of the reversal by the Bureau of the granting of the sole community provider status.

4. The Plaintiff then appealed the matter to the Provider Reimbursement Review Board which held its hearing on September 21, 1978. Live testimony was taken on said date and post hearing briefs were submitted. On March 19, 1979, the Provider Reimbursement Review Board filed its written opinion and decision determining that the Plaintiff was in fact the "sole community provider" in Wenatchee, Washington during the period in question. The Court finds that this decision was not only supported by "substantial evidence" in the record, but also by "clear and convincing" evidence.

5. The Administrator, Health Care Financing Administration, pursuant to designation by the Secretary of Health, Education, and Welfare, sua sponte, reversed the decision of the Provider Reimbursement Review Board on May 16, 1979, finding that the "Board's decision is not based upon substantial evidence".

6. Pursuant to 42 U.S.C. § 1395*oo* (f)(1), the Plaintiff appealed the decision of the Defendant, to the United States District Court. This appeal is on the record produced before the Provider Reimbursement Re-

view Board. Both parties, in accordance with ongoing procedures and Rule 56 of the Federal Rules of Civil Procedure, filed Motions for Summary Judgment. The matter is now before the Court for its review and decision.

## SCOPE OF REVIEW AND DECISION

The Plaintiff in this action contends that the Administrator (by designation of the Secretary of H.E.W.) can only reverse or modify the P.R.R.B.'s decision if he finds that the Board's decision was not based upon substantial evidence when the record is viewed as a whole. In this contention the Plaintiff relies upon 42 U.S.C. § 1395oo (d) which provides in part as follows:

A decision by the Board shall be based upon the record made at such hearing, which shall include the evidence considered by the intermediary and such other evidence as may be obtained or received by the Board, and *shall be supported by substantial evidence* when the record is viewed as a whole.

The Plaintiff further argues that the Administrator has tacitly agreed with the foregoing scope of review in view of the Administrator's finding that the Board's decision was "not supported by substantial evidence when the record is viewed as a whole". (TR 15)

■ For the reasons hereinafter stated the Court does not agree with the Plaintiff's position as to the scope of review. The Court finds that the scope of review in this matter involves a determination as to whether or not the record in this case contains substantial evidence to sustain the *Secretary's* (Administrator's) decision, not the *Board's* decision. *Fairfax Hospital v. Califano*, 585 F.2d 602, 612 (4th Cir., 1978).

The statute providing for judicial review of a P.R.R.B. decision and/or a reversal, affirmance, or modification by the Secretary, 42 U.S.C. § 1395oo (f), states that such review shall be pursuant to the Administrative Procedure Act (A.P.A.), 5 U.S.C. §§ 701–706. Therefore, the Secretary's decision in this matter is to be reviewed under the terms of the A.P.A.

Section 706(2)(A) of the A.P.A. states that the reviewing Court shall "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, [or] an abuse of discretion, or otherwise not in accordance with the law". This limited scope of review (arbitrary and capricious) is generally applicable to those cases such as adoption of regulations or interpretation thereof, which matters are deemed to be policy matters or within the expertise of an agency. *Mulry v. Driver*, 366 F.2d 544 (9th Cir. 1966). Such limited scope of review does not apply in this case.

Section 706(2)(E) of the A.P.A. also provides that the reviewing Court shall hold unlawful and set aside agency action, findings, and conclusions found to be *"unsupported by substantial evidence* in a case subject to sections 556 and 557 of this Title (5 U.S.C.S. §§ 556 and 557) or otherwise *reviewed on the record of an agency* hearing provided by statute;"* (Emphasis Supplied). The Defendant in this case acknowledges that the scope of review in this case is one of "substantial evidence" rather than the more stringent "arbitrary or capricious" test. (See page 6 lines 19 and 20 and page 12 line 31 of Defendant's Memorandum filed June 19, 1980). This scope of review is likewise appropriate in view of the fact that this case involves factual findings by the Secretary as opposed to adoption, interpretation, or construction of an agency's own regulation as was the case in *Pacific Coast Medical Enterprises v. Harris*, slip op. page 2616, 633 F.2d 123 (9th Cir., 1980).

The scope of review in this case, as conceded in the brief of the Defendant, is the "substantial evidence" test discussed in *Memorial Inc. v. Harris*, slip op. page 2496, (9th Cir., 1980). Also, the "substantial evidence" scope of review is mandated by § 706 of the A.P.A. (5 U.S.C. § 706(2)(E) inasmuch as the Defendant in this case, in his ruling, refers to the decision being made on the record of the P.R.R.B. hearing. (TR 12, 15).

The Defendant contends that the reviewing Court has limited authority to overturn

the decision of an administrative body citing *Mulry v. Driver*, 366 F.2d 544 (9th Cir., 1966). It is submitted that this position of the Defendant applies to instances where judicial review is of an agency action such as the adoption of rules or regulations or the establishment of policy rather than in the instance of a factual determination as herein involved. The *Mulry* case cited by the Defendant involved a policy determination by the Veteran's Administration to prohibit physicians employed by the Veteran's Administration from engaging in outside legal practice. Such a determination was of course a policy determination and the Ninth Circuit Court of Appeals in *Mulry, supra*, based its decision upon the fact that the decision was one passed specifically by Congress to the agency. Such is not the case here.

In this case, the agency reviewing the record established before the P.R.R.B., has come to a different conclusion than that of the Board. In *Universal Camera Corp. v. National Labor Relations Board*, 340 U.S. 474, 496, 71 S.Ct. 456, 468, 95 L.Ed. 456 (1951), the Court, while acknowledging that the "substantial evidence" standard is not modified in any way when the agency and the examiner (in this case the P.R.R.B.) disagree, established that the agency's conclusion should be scrutinized when it is contrary to that of an "impartial, experienced examiner (P.R.R.B.) who has observed the witnesses and lived with the case". Such a rule does not mean that the Administrator's scope of review is limited to determining whether the decision of the P.R.R.B. is supported by substantial evidence, however, in determining whether the Administrator's decision in turn is supported by substantial evidence, the Court should consider and review the decision of the P.R.R.B. *Fairfax v. Califano*, 585 F.2d 602 (4th Cir., 1978) and *Universal Camera, supra*.

While the "substantial evidence" standard of review does not allow a reviewing Court to substitute its judgment for that of the agency, the review under this standard is not to be a superficial or cursory review. The Court's inquiry must be searching and careful, subjecting the agency's decision to close judicial scrutiny. Likewise, the reviewing Court is not confined to those portions of the record, if any, which the agency cites in support of its conclusions. The Court is charged to review the record as a whole. *Packer Transportation Co. v. United States*, 596 F.2d 891, 894 (9th Cir., 1979); *Universal Camera v. N.L.R.B.*, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951); *Memorial Inc. v. Harris*, slip op. pages 2503, 2504 (9th Cir., 1980). The question presented in this case is not demanding of medical or medicare program expertise and as such the Administrator's decision is not entitled to be accorded significant deference as contended by the Defendant herein.

The Court recognizes that under the "substantial evidence" standard of review, a reviewing court may not substitute its judgment for that of the agency. *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). However, the reviewing Court must carefully review the entire record and subject the Administrator's decision to close judicial scrutiny to establish that substantial evidence exists, in which case the agency's decision must be affirmed. "Substantial evidence" exists if there is "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion". *Consolo v. Federal Maritime Commission*, 383 U.S. 607, 620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966); *R.S.R. Corp. v. Federal Trade Commission*, 602 F.2d 1317, 1320 (9th Cir., 1979).

In keeping with the foregoing rules, the Court in this case has carefully searched the record to determine if "substantial evidence" exists to support the Administrator's conclusions and decision. Such review of the record not only establishes that "substantial evidence" does not exist to support the Administrator's decision, but also that the Administrator's decision is clearly erroneous.

The decision of the Administrator that the Plaintiff was not the "sole community provider" in the Wenatchee area is princi-

pally based upon the fact that for the period in question, two separate provider agreements and two separate provider numbers existed for Plaintiff's facilities and Plaintiff filed separate cost reports for the two facilities.

As set forth above, the undisputed and undenied testimony in the record is that the intermediary informed the Plaintiff that it should file two separate cost reports for its facilities for the period. (TR 151). The filing of separate cost reports required the utilization of separate provider numbers. When ownership of a provider (in this case St. Anthony's is transferred, the existing provider agreement with the Secretary is invalidated. 42 C.F.R. § 405.625. *Memorial Inc. v. Harris*, slip op. pp. 2496, 2500 (9th Cir., 1980). Thus, to comply with the intermediary's directions to file separate cost reports, the Plaintiff was required to have two separate provider agreements. To hold that the existence of such separate provider agreements dictates the conclusion that in fact the Plaintiff's two facilities constituted two separate hospitals is a non–sequitur and would place form over substance. *Parker v. Flook*, 437 U.S. 584, 590, 98 S.Ct. 2522, 2525, 57 L.Ed.2d 451 (1978). Likewise such a conclusion is contrary to the undisputed testimony that the "intermediary" suggested the filing of the two separate cost reports. Except for the existence of these two provider agreements and numbers the Administrator does not deny that a true consolidation of Plaintiff's two facilities into one hospital took place.

Such a reliance on form over substance does not constitute "substantial evidence" and likewise avoids the true issue in this case which is whether or not the Plaintiff's consolidated facilities constitute the sole general acute hospital available to Medicare beneficiaries in Wenatchee, Washington.

The record is undisputed that in fact a true consolidation of the two facilities became effective on or about July 1, 1974. Likewise, the record is clear and undisputed that a patient in Plaintiff's facilities was charged the same rate, regardless of which unit (Deaconess or Rosewood) the patient requested or was assigned to (TR 160). As such, the Medicare beneficiary had no choice between a "tourist" class hospital whereby all charges therein would be paid by Medicare or a "first class" hospital whereby the "tourist" charges would be paid by Medicare with the patient paying the "first class" excess. The "sole community provider" exemption was obviously created to cover the very situation existing in Wenatchee, Washington after the termination of St. Anthony's hospital. After July 1, 1974, a Medicare patient did not have the choice of a less expensive hospital.

While as above stated, it is clear that the Administrator erroneously considered form over substance and fact in determining that Plaintiff's two facilities constituted two separate hospitals, the Administrator further concluded that the existence of the Eye and Ear Hospital in Wenatchee, Washington precluded Plaintiff's facilities from being a "sole community provider". This is a true case of comparing "apples with oranges".

The regulation, 42 C.F.R. § 405.460(f)(4), concerning the "sole community provider" status provides that the issue is whether other providers of the *same type* are reasonably available to beneficiaries. The Plaintiff's hospital is a *long term general acute hospital* providing some *30* categories of service. The Eye and Ear Hospital is a *specialty hospital* providing only *2* categories of service. Clearly the Eye and Ear Hospital is not of the *same type* as Plaintiff's hospital and the Administrator's decision to the contrary is clearly erroneous and contrary to all the evidence in the record.

The Administrator also attempts to "boot–strap" his opinion by referring to the existence of the small Cascade Hospital in Leavenworth, Washington. This hospital had been granted "sole community provider" status, thus recognizing that the Plaintiff's hospital in Wenatchee was not in the terms of the regulation, "reasonably available" to Medicare beneficiaries in Leavenworth. Therefore, one must conclude that the Cascade Hospital in Leavenworth was

**1154**

not "reasonably available" to Wenatchee beneficiaries. In discussing the "availability" of the Leavenworth hospital to Wenatchee beneficiaries, the Administrator further concluded that "the Provider is not located in an area with extended periods of adverse weather or adverse topographical conditions." This conclusion is also contrary to the undisputed facts and evidence in the record as above set forth and therefore is clearly erroneous and not based upon substantial evidence.

For the reasons herein stated, the Administrator's decision that Plaintiff's hospital did not constitute the "sole community provider" of hospital services in Wenatchee, Washington is not based upon substantial evidence in this record. Additionally, that portion of the Administrator's decision finding that the decision of the Provider Reimbursement Review Board "is not supported by substantial evidence when the record is viewed as a whole" is clearly erroneous. *Miller v. United States*, 587 F.2d 991, 994 (CA9 1978); *Felder v. United States*, 543 F.2d 657, 663 (CA9 1976).

The Plaintiff's Motion for Summary Judgment is granted and the Defendant's Motion for Summary Judgment is denied. This Memorandum Opinion and Order shall constitute the Court's Findings of Fact, Conclusions of Law and Order.