964 F.2d 1462
 140 L.R.R.M. (BNA) 2776, 60 USLW 2786,
121 Lab.Cas. P 10,186
 Herman E. McMAHAN, Plaintiff-Appellant,
v.
INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL AND
ORNAMENTAL IRON WORKERS, Iron Workers Union Local
601; South Carolina National Bank,
Defendants-Appellees,
and
George P. Simmons, Jr., Defendant.
Lynn Martin, Secretary of Labor, United States Department of
Labor, Amicus Curiae.
 No. 91-2049.
 United States Court of Appeals,
Fourth Circuit.
 Argued Feb. 5, 1992.
Decided June 1, 1992.
 
 Mark S. Flynn, argued (David S. Fortney, Deputy Sol., Allen H. Feldman, Associate Sol. for Sp. Appellate and Supreme Court Litigation, Steven J. Mandel, Deputy Associate Sol., and Edward D. Sieger, on brief), U.S. Dept. of Labor, Washington, D.C., for amicus curiae.
 D. Mark Stokes, North Charleston, S.C., argued (Dale L. DuTremble, Charleston, S.C., on brief), for plaintiff-appellant.
 Sandra Rae Benson, argued (Victor J. Van Bourg, on brief), Van Bourg, Weinberg, Roger & Rosenfeld, San Francisco, Cal., for defendants-appellees.
 Before HALL, NIEMEYER, and LUTTIG, Circuit Judges.
 OPINION
 K.K. HALL, Circuit Judge:
 
 
 1
 Herman McMahan appeals the district court's order, adopting a magistrate's recommendation, that granted appellees' motion for summary judgment. We disagree with the district court's holding that 29 U.S.C. § 504(d) does not create a private right of action. However, we agree that only one of the appellee unions is the proper party defendant in such an action. Accordingly, we reverse in part and remand for further proceedings.
 
 I.
 
 2
 Appellant McMahan, with a cohort, Charles Price, defrauded members of the appellee unions in the early 1980s. As business managers of Iron Workers Locals 601 and 808, McMahan and Price were responsible for collecting a fee from new members. They charged a fee that greatly exceeded the union's actual assessment, and then pocketed the difference.
 
 
 3
 The United States indicted McMahan and Price for mail fraud and embezzlement. The government's legal theory was not that McMahan and Price defrauded union members of money, but rather that they defrauded members of their right to honest union leadership. In support of the embezzlement charge, the government maintained that McMahan and Price had converted the union's membership forms to their own use. Both theories were to prove faulty.
 
 
 4
 After a jury trial, the two were convicted on all charges. On January 29, 1985, they were sentenced to a year of imprisonment each. The next day, the prosecutor wrote the unions' in-house counsel and planted the seed of this case. The prosecutor informed the unions' counsel that, under 29 U.S.C. § 504(a), McMahan and Price were immediately barred from their union jobs.
 
 
 5
 McMahan and Price appealed. This court reversed the embezzlement convictions, but affirmed the mail fraud charges. United States v. Price, 788 F.2d 234 (4th Cir.1986). On petition for certiorari, the Supreme Court vacated our judgment and remanded for reconsideration in light of McNally v. United States, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987). McMahan v. United States, 483 U.S. 1015, 107 S.Ct. 3254, 97 L.Ed.2d 754 (1987). In McNally, the Court held that the mail fraud statute does not apply to deprivations of "intangible" rights like good government or honest leadership.
 
 
 6
 On remand, this court overturned the mail fraud convictions. United States v. Price, 857 F.2d 234 (4th Cir.1988). Our opinion recognized that McMahan and Price could have been prosecuted for defrauding the union members of money, id. at 236 n. 1. Though we noted that the government was free to seek a new indictment, id. at 236-237, the government did not renew its efforts to prosecute.
 
 
 7
 On May 9, 1989, McMahan filed suit for back pay against Local 601 and its parent union, the International Association of Bridge, Structural and Ornamental Iron Workers (International). Under 29 U.S.C. § 504(d), part of the Labor-Management Reporting and Disclosure Act (LMRDA), the "individual" union-employer was required to escrow the funds it would have otherwise paid McMahan while his appeal was pending. If his conviction had stood, the escrowed funds would have reverted to the union. Local 601 failed to set up an escrow account for McMahan. On the advice of counsel, McMahan set up an account into which his paychecks were deposited.[1] 1] Deposits stopped when McMahan went to jail.[2] While McMahan was incarcerated, financially-strapped[3] Local 601 withdrew $32,000 from the account to pay back dues to the International. The unions allege that McMahan himself had withdrawn funds from the account illegally.
 
 
 8
 Moving for summary judgment, the unions argued that only the Secretary of Labor could bring a suit to redress a breach of the escrow requirement. In the alternative, the unions argued that the statute of limitations had run or that the escrow requirement is unconstitutional. The International further maintained that it was not the entity responsible for escrowing salary under § 504(d).
 
 
 9
 Following the recommendation of a magistrate, the district court held that only the Secretary could bring suit to enforce the escrow agreement, and so dismissed McMahan's case. The court also held that the International would not be liable in any event.
 
 
 10
 McMahan appeals. Though she did not participate below, the Secretary sought and was granted leave to file a brief and argue as amicus curiae.
 
 II.
 A.
 
 11
 29 U.S.C. § 504(a) prohibits, for a period of thirteen years after conviction or end of imprisonment, certain criminals from holding offices in unions. Section 504(d), at issue in this case, provides:
 
 
 12
 Salary of office or position of persons convicted placed in escrow
 
 
 13
 Whenever any person--
 
 
 14
 (1) by operation of this section, has been barred from office or other position in a labor organization as a result of a conviction, and
 
 
 15
 (2) has filed an appeal of that conviction, any salary which would be otherwise due such person by virtue of such office or position, shall be placed in escrow by the individual employer or organization responsible for payment of such salary. Payment of such salary into escrow shall continue for the duration of the appeal or for the period of time during which such salary would be otherwise due, whichever period is shorter. Upon the final reversal of such person's conviction on appeal, the amounts in escrow shall be paid to such person. Upon the final sustaining of such person's conviction on appeal, the amounts in escrow shall be returned to the individual employer or organization responsible for payments of those amounts. Upon final reversal of such person's conviction, such person shall no longer be barred by this statute from assuming any position from which such person was previously barred.
 
 
 16
 This provision was enacted as a small cog in the prolix Comprehensive Crime Control Act of 1984, Pub.L. No. 98-473, 98 Stat. 1837, which, among other notable provisions, included the Bail and Sentencing Reform Acts. The LMRDA's debarment rule, which previously did not take effect until a convicted union official's appeals were exhausted, was amended to make debarment immediate upon conviction. The escrow provision in § 504(d) tempers the immediate debarment by permitting a subsequently-exonerated official to recover the salary that would have been "otherwise due" him but for the conviction. The same title of the Comprehensive Crime Control Act made identical amendments to the Employee Retirement Income Security Act (ERISA), providing for the immediate debarment on conviction of administrators of employee benefit plans. See 29 U.S.C. § 1111.
 
 
 17
 There is nothing in the statute expressly creating a private right of action for a violation of § 504(d), but McMahan asserts that a right of action is implied. The "focal point of our inquiry is the intent of Congress," Former Special Project Employees Ass'n v. City of Norfolk, 909 F.2d 89, 91 (4th Cir.1990), and we are guided by the four relevant factors identified in Cort v. Ash, 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975) --
 
 
 18
 (1) Is McMahan a member of the class for whose especial benefit the statute was enacted?
 
 
 19
 The magistrate looked to the purpose of the statute as a whole, concluded that its purpose was to protect unions from corrupt management, and then had no trouble finding that McMahan was not a member of the class Congress intended to benefit. McMahan argues, and we agree, that the purpose of § 504(d) should not be overlooked when deciding whether § 504(d) creates a private right of action. McMahan, a convicted union official who appeals his conviction, is clearly a member of the class for whose especial benefit the escrow provision exists. No one but persons like McMahan can possibly benefit from it. Where the phrasing of a statute confers a right directly upon a class of persons, rather than generally prohibiting or commanding action by a federal agency, the Supreme Court has been more likely to find an implied private right of action. Universities Research Ass'n v. Coutu, 450 U.S. 754, 771-772, 101 S.Ct. 1451, 1461-1462, 67 L.Ed.2d 662 (1981). Section 504(d) is the epitome of a statute conferring a right directly upon a class of private persons.
 
 
 20
 (2) Is there any indication that Congress intended to create or deny a remedy?
 
 
 21
 The magistrate found that 29 U.S.C. § 521's grant of investigative power to the Secretary of Labor implied that § 504(d) could not be enforced by the person harmed. The Secretary, as amicus, does not read her power so broadly. Section 521 is a general provision, applicable to all of LMRDA, 29 U.S.C. § 401 et seq. She points out that 29 U.S.C. § 501(b) expressly creates an exclusive private cause of action[4]; because the § 521 investigative power applies to this section as well, it cannot be as displacing as the unions suggest. Moreover, § 521 itself does not expressly confer a right of action on the Secretary of Labor, but instead allows her to "report to interested persons or officials concerning any ... matter which [s]he deems to be appropriate as a result of such investigation." The Secretary explains that, under § 521, she simply investigates and then recommends remedial action, if any is available, to the Justice Department or other interested agency. We do not think that the Secretary's investigative power implies anything about Congress' intent to create or deny a remedy.
 
 
 22
 A more revealing hint as to congressional intent is its simultaneous enactment of an identical provision in ERISA. A Senate Report stated that the amendments of the LMRDA and ERISA were intended to be "parallel," and that the escrow provisions were the "same." S.Rep. No. 225, 98th Cong., 1st Sess. 298-299 (1983), reprinted in 1984 U.S.Code Cong. & Admin.News 3182, 3478-3479. The ERISA provision, however, falls within the ambit of a general private right of action created by previously-enacted 29 U.S.C. § 1132.
 
 
 23
 Parallel provisions ought to have parallel remedies. Either Congress intended to create a private remedy, and overlooked the absence of a provision like ERISA's in the LMRDA, or it did not, in which case it forgot to override the express ERISA right of action.[5] In light of the peculiarly private nature of the right created by the escrow provision, we conclude that the first of these scenarios is the more probable.
 
 
 24
 (3) Is a remedy in favor of McMahan consistent with the purpose of the legislative scheme?
 
 
 25
 The magistrate repeated his reasoning from the first Cort factor that the purpose of the legislation as a whole was to protect unions from persons like McMahan; therefore, a cause of action for McMahan is inconsistent with that purpose. In this particular case, few would disagree with the sentiment, but we question the reasoning. We think it undeniable that a purpose of the statute as a whole, expressed in § 504(d), was to permit ex-union officials disqualified from office by convictions that are ultimately reversed to be made whole out of the escrow account. To ignore this purpose is to set at naught the careful balance of competing interests embodied in legislative action.
 
 
 26
 The statute unequivocally commands that, upon reversal, the amounts in escrow "shall be paid to such person." If the union refuses to pay, and "such person" cannot sue, the admonition that he "shall be paid" carries little force.[6] A remedy in favor of McMahan is consistent with the legislative scheme.
 
 
 27
 (4) Is the cause of action traditionally relegated to state law?
 
 
 28
 The magistrate reasoned, and we agree, that labor policy is a federal arena, and there is no tradition of state causes of action for failing to escrow the salary of union officials appealing criminal convictions.
 
 
 29
 The magistrate, by finding that only the fourth Cort factor supported an implied right of action, held that none was available. We disagree. All of the Cort v. Ash factors support finding a private right of action. We therefore hold that 29 U.S.C. § 504(d) creates an implied private right of action for union officials aggrieved by a union's failure to comply with that subsection.
 
 B.
 
 30
 Anticipating our possible disagreement with the magistrate's reasoning, the unions urge us to affirm on alternative grounds. They describe Local 601's predicament. The government, on its own, decides to prosecute a union official. The government's lawyers choose the legal theories of the prosecution and handle the tactics of the prosecution without the union's input. On conviction, the government orders the union to remove the official from office. If the official appeals, the union must pay his salary into escrow, while paying someone else to do his job. At this point, the best thing that can happen to the union, from a financial standpoint, is that it will get its money back. The worst thing is what has happened--the union must pay for services that were never rendered, because a conviction over which it had no control was reversed in an appeal over which it had no control. Local 601 explains that even the first scenario would have severely burdened it, because it could not afford to pay two salaries simultaneously even if it were assured of eventual reimbursement.
 
 
 31
 Local 601 complains that this deprivation of money lacks due process of law and is a taking for a public use--keeping union officials out of office during appeals--without just compensation. The magistrate and district court did not address these arguments.
 
 
 32
 Local 601's challenge is at least colorable.[7] 7] To say the least, McMahan's attempt to recover money from the insolvent union he bilked fills us with no sympathy. We of course have the power to affirm a judgment for any reason appearing on the record, notwithstanding that the reason was not addressed below. Blum v. Bacon, 457 U.S. 132, 137 n. 5, 102 S.Ct. 2355, 2359 n. 5, 72 L.Ed.2d 728 (1982). On the other hand, we perform a solemn, perhaps our most solemn, duty in deciding whether a statute--the considered, deliberate act of another branch of government, generally (as here) bearing the endorsement of yet a third--offends the Constitution. We should not undertake this task unless it is necessary and we possess the developed record the gravity of the occasion requires. See, e.g., Department of Labor v. Triplett, 494 U.S. 715, 110 S.Ct. 1428, 108 L.Ed.2d 701 (1990), rev'g, Committee on Legal Ethics v. Triplett, 180 W.Va. 533, 378 S.E.2d 82 (1988) (criticizing state court for striking down federal statute without a fully-developed factual record).
 
 
 33
 Summary judgment was granted at a very early stage of these proceedings, and the paucity of the record counsels us to refrain from reaching out to decide the constitutional question posed by the unions. For all we can know now, Local 601 may defeat McMahan's claim on a nonconstitutional ground, or the case may be settled or become moot. It is not certain that resolution of the constitutional issue will ever be necessary. In any event, if we must someday decide it, we will benefit from a fully-developed factual record and the district court's analysis. We will therefore leave Local 601's constitutional challenge to § 504(d) for consideration on remand.
 
 C.
 
 34
 As a final alternative, the unions argue that McMahan's action is barred by the statute of limitations, because it was filed more than six months after his conviction was reversed. They urge us to borrow the six-month statute of limitations from § 10(b) of the National Labor Relations Act,[8] as did the Supreme Court in Del Costello v. International Brotherhood of Teamsters, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). McMahan counters that when a federal cause of action lacks an express limitations period--as every "implied" cause of action does--courts should generally apply the most closely analogous statute under state law. Reed v. United Transportation Union, 488 U.S. 319, 109 S.Ct. 621, 102 L.Ed.2d 665 (1989). He asserts that his action is timely under any one of several South Carolina statutory candidates.
 
 
 35
 This issue was not reached by the district court, and we will not decide it on the thin record before us. Statutes of limitation are notorious for their exceptions and nuances of application, and even if we chose an applicable limitations period, a remand would still be required to assure that it is properly applied to the facts and circumstances of this case. Rather than risk issuing an advisory opinion or one based on a misperception of facts, we will leave this issue as well for the district court in the first instance.
 
 III.
 
 36
 The district court granted the International's motion for summary judgment because the International was not the labor organization responsible for the payment of the funds into escrow. The International submitted unrebutted affidavits below that McMahan was not its employee. Section 504(d) specifically limits the escrow requirement to "the individual employer or organization responsible for payment of such salary." (emphasis added.) The only possible meaning of "individual" is that Congress intended to limit the escrow obligation to the entity that employed the person and had paid the salary before the person's conviction. That entity is Local 601 only. We therefore affirm the summary judgment for the International.
 
 
 37
 The judgment in favor of the International is affirmed; the judgment in favor of Local 601 is reversed, and the case is remanded for further proceedings consistent with this opinion.
 
 
 38
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 
 
 
 [1]
 According to the affidavit of Billy Joe Walker, administrator of Local 601, the local deposited McMahan's salary "[f]or a time" into the escrow account. McMahan counters that he was paid directly, and made the deposits himself. This dispute of fact is not material to the issues before us
 
 
 [2]
 Notwithstanding the immediate debarment rule of 29 U.S.C. § 504(a), McMahan continued to serve as Local 601's business manager until his incarceration on October 15, 1986
 
 
 [3]
 Local 601 is now in receivership because of its poor financial condition
 
 
 [4]
 § 501(b) permits a union member to sue for an officer's breach of fiduciary duty if the union refuses to do so
 
 
 [5]
 The other possibility--that Congress consciously intended the ERISA provision to be enforceable and the LMRDA's to be a mere exhortation--is much less plausible, as the two provisions would hardly deserve adjectives like "same" or "parallel."
 
 
 [6]
 If, as under the Fair Labor Standards Act, see 29 U.S.C. § 216(c), the Secretary had the power to sue on behalf of aggrieved persons, a private remedy might not be essential to effect the purpose of § 504(d). Nonetheless, the Secretary does not interpret the statute to give her such a power, and to the extent there is any ambiguity in the LMRDA, this quite reasonable interpretation is entitled to our deference. Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). In any event, we observe that the class of persons protected by the Fair Labor Standards Act includes many at the very bottom of the economic ladder, and the Secretary's enforcement power is necessary to provide these persons the wherewithal to recover their wages. Congress could have reasonably concluded that persons like McMahan need no such assistance
 
 
 [7]
 The constitutionality of the escrow procedure was challenged before the Ninth Circuit several years ago, but the court found the issue unripe, and hence declined to address it. Teamsters Local 186 v. Brock, 812 F.2d 1235, 1239 (9th Cir.1987)
 
 
 [8]
 29 U.S.C. § 160(b)