**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JOHN JORGENSEN, Individually, and
on behalf of all other persons
similarly situated,
<u>Plaintiff-Appellant,</u>

No. 95-2087

v.

THE CITY OF CLARKSBURG, WEST
VIRGINIA, a municipal corporation,
<u>Defendant-Appellee.</u>

Appeal from the United States District Court
for the Northern District of West Virginia, at Clarksburg.
Irene M. Keeley, District Judge.
(CA-94-69-1)

Argued: May 7, 1996

Decided: July 2, 1996

Before WIDENER, MURNAGHAN, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** John M. Hedges, Morgantown, West Virginia, for Appel-
lant. Thomas Joseph Obrokta, Jr., JENKINS, FENSTERMAKER,
KRIEGER, KAYES & AGEE, Huntington, West Virginia, for Appel-
lee. **ON BRIEF:** J. Michael Benninger, WILSON, FRAME, BEN-
NINGER & METHENEY, Morgantown, West Virginia, for

Appellant. John E. Jenkins, Jr., JENKINS, FENSTERMAKER, KRIEGER, KAYES & AGEE, Huntington, West Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

In an effort to preserve local jobs, government and community leaders in Harrison County, West Virginia, structured a loan of $8,500,000 from public and private sources which enabled the Anchor Hocking Glass Company to purchase and renovate a glass manufacturing facility that was slated to close. Of that amount, state and local entities provided $4,500,000. The remaining $4,000,000 came from the Department of Housing and Urban Development ("HUD"), an agency of the federal government, which made an Urban Development Action Grant ("UDAG") to the City of Clarksburg, which then lent the money to Anchor Hocking. Pursuant to Section 5310 of the Housing and Community Development Act of 1974, 42 U.S.C. § 5301 et seq. (1988 & Supp. II 1990) ("HDCA"), which governs the grant, plant employees whose continued occupation was made possible by the UDAG grant were to be paid minimum wages as provided by the Davis-Bacon Act, 40 U.S.C. § 276a to 276a-5 (1988).[1]

John Jorgensen worked for Anchor Hocking at the Clarksburg facility during and after the renovation. He sued in federal court for himself and others similarly situated, alleging that Anchor Hocking failed to pay Davis-Bacon minimum wages and that the City of

_____

[1] Section 5310 requires that laborers employed on construction work financed in whole or in part by HDCA grants shall receive wages not less than those prevailing for similar work in the locality in accordance with the Davis-Bacon Act.

2

Clarksburg was liable for the lost earnings. The City sought summary judgment, claiming that it was not a state actor as Jorgensen had alleged in his 42 U.S.C. § 1983 (1988) complaint.**2**

Because we find it dubious to rely on non-state status as did the City in arguing for summary judgment, we will assume that such state status existed.**3** In addition, we accept that Jorgensen was wrongly deprived of full wages in violation of the Davis-Bacon Act. The question remains therefore whether Jorgensen has alleged any action or inaction by the City of Clarksburg which may be seen as causing that deprivation and thus violating § 1983. West v. Atkins, 487 U.S. 42, 48 (1988) (explaining that to obtain relief under § 1983, plaintiff must prove that defendant caused a deprivation of plaintiff's federal constitutional or statutory right while acting under color of state law). Viewing the evidence in the light most favorable to Jorgensen, United States v. Diebold, 369 U.S. 654, 655 (1962) (per curiam), we find no such violation.

While HDCA makes Davis-Bacon standards applicable to UDAG projects, we find nothing in the record establishing the City's liability for Anchor Hocking's noncompliance. The grant agreement imposed no affirmative duty on the City actually to pay part of the wages earned by Jorgensen in performing services for Anchor Hocking. Compare Casias v. City of Raton, 738 F.2d 392, 396 (10th Cir. 1984) (finding possibility of state action on part of city administering federal grant because the city expressly assumed legal and financial responsi-

_____

**2** Section 1983 renders civilly liable any "person, who under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."
**3** In light of Monell v. Department of Social Servs., 436 U.S. 658, 690-91 (1978) (holding that municipalities are suable"persons" under § 1983), we find it unlikely that the City could properly be found not to be a state actor by any court. Moreover, courts have found actions of state and municipal agencies administering federally funded programs to be actions undertaken under color of state law. See, e.g., Chan v. New York, 1 F.3d 96, 106-07 (2d Cir. 1993), cert. denied, 114 S. Ct. 472 (1994); Tongol v. Usery, 601 F.2d 1091, 1097 (9th Cir. 1979).

3

bility and accountability in grant documents both for awarded funds and performance of the grant-supported activity and because the city played an active role in the employment activities at issue). The agreement only required that the City administer and enforce federal labor standards. There is no federal or state law expressly mandating that the City pay the owed wages itself. Finally, the City took no action that prevented Anchor Hocking from satisfying its federal obligation. Compare Chan v. New York, 1 F.3d 96, 106-07 (2d Cir. 1993) (finding city officials administering federal grant program responsible as state actors for violation of Section 5310 and Davis-Bacon Act because the city played an active role in preventing general contractors from paying at the federally mandated levels), cert. denied, 114 S. Ct. 472 (1994).

Instead, the City endeavored to force compliance by Anchor Hocking in a manner that met with HUD approval. The City regularly notified the company of its obligation to pay wages at Davis-Bacon levels and attempted to ensure that it did so. Such calling on the employer to obey the law was the most that HUD demanded of the City in the way of monitoring. Going further to require actual substitution payment by the City of money owed by Anchor Hocking would necessitate a provision in the UDAG grant agreement which is conspicuously and completely lacking.

While we recognize that summary judgment may have been granted for the wrong reason, we find the action proper nonetheless. We therefore affirm the disposition on grounds different from those relied on by the district court. See McMahan v. International Assoc. of Bridge, Structural & Ornamental Iron Workers, 964 F.2d 1462, 1467 (4th Cir. 1992) (affirming on basis different from that given by district court).

The judgment is accordingly

AFFIRMED.

4