**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 24-1638**

MEGAN HEDGEPETH,

> Plaintiff – Appellant,

v.

NASH COUNTY; NATALIE WEBB, in her individual capacity; MARY REEVES, in her individual capacity,

> Defendants – Appellees.

Appeal from the United States District Court for the Eastern District of North Carolina, at Greenville. Louise W. Flanagan, District Judge.  (4:21-cv-00144-FL)

Submitted: March 5, 2025                        Decided:  May 6, 2025

Before QUATTLEBAUM and HEYTENS, Circuit Judges, and TRAXLER, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

**ON BRIEF:**  Sharika M. Robinson, THE LAW OFFICE OF SHARIKA M. ROBINSON, Charlotte, North Carolina, for Appellant.  Nikole M. Crow, Atlanta, Georgia, Sonny S. Haynes, WOMBLE BOND DICKINSON (US) LLP, Winston-Salem, North Carolina, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Megan Hedgepeth filed an action under 42 U.S.C. § 1983 against Nash County, North Carolina, and two county employees asserting numerous causes of action, including malicious prosecution and procedural Due Process claims. The district court granted summary judgment in favor of the defendants, and Hedgepeth appeals. Finding no reversible error, we affirm.

I.

This case involves benefits—colloquially referred to as food stamps—under the Supplemental Nutrition Assistance Program. The food stamps program is administered by the states and provides benefits to qualified recipients under a formula that considers the number of people living in the household and the total income available to the household. *See generally* 7 U.S.C. § 2014; 7 C.F.R. § 273.10. Benefits are paid for a specified period of time, known as a "certification period." 7 U.S.C. § 2012(f). The certification period generally may not exceed 12 months, and benefits terminate automatically at the end of the certification period. *See* 7 C.F.R. § 273.14(a) ("No household may participate beyond the expiration of the certification period assigned in accordance with § 273.10(f) without a determination of eligibility for a new period."). As the end of the certification period approaches, the state agency notifies recipients that their benefits are expiring and informs them they must submit an application with certain required information to be recertified for benefits. *See* 7 U.S.C. § 2020(e)(4); 7 C.F.R. § 273.14(b).

Prior to the events giving rise to this case, Hedgepeth and her three minor children lived on Womble Road in Nashville, North Carolina. Tawaildo Brown is the father of two

of Hedgepeth's children. Hedgepeth received food stamps, which were administered through the Department of Social Services for Nash County ("DSS"). Hedgepeth subsequently moved to Hollister, North Carolina. Because Hollister is in Halifax County, Hedgepeth should have notified DSS when she moved. She did not do so.

In Hollister, Hedgepeth rented a trailer owned by her aunt and located on property owned by her father on Medoc Mountain Road. The Medoc Mountain Road property appears to be family homestead land, with multiple homes on it and multiple mailing addresses associated with it. The physical address of Hedgepeth's trailer is 8163 Medoc Mountain Road, but Hedgepeth does not have a mailbox, so she receives her mail at her father's address—8185 Medoc Mountain Road.

In April 2018, DSS received an anonymous tip that Hedgepeth had been living in Halifax County with Brown for the last five years. Hedgepeth had never included Brown as a member of her household in the information she provided when applying or being recertified for food stamps. The tip was referred to Defendant/Appellee Natalie Webb, a DSS fraud investigator in the Program Integrity department. Webb opened a file and sent Hedgepeth a notice requesting information about where she lived and who lived with her. Hedgepeth responded, informing Webb that she and her children now lived in Halifax County in a house owned by her aunt and providing a copy of her lease. After Webb spoke to Hedgepeth's parents, who both confirmed that she was living with her children only, Webb closed the fraud investigation.

Even though Hedgepeth by then lived in Halifax County, Nash County was required to first re-certify Hedgepeth's eligibility for food stamps before transferring her case to

3

Halifax County. The County began the process of re-certifying Hedgepeth's eligibility for Food Stamps sometime in June 2018. Not long after, the County received another tip that Hedgepeth was living in Halifax County with Brown. The tip was from the original anonymous tipper, but this time he identified himself as Jimmy Silver, a retired Highway patrol officer and Hedgepeth's uncle by marriage. Silver also reported that people in the community might not cooperate with the investigation because Hedgepeth had falsely told others that DSS was trying to take her children from her. After talking to Hedgepeth's uncle Calvin Hedgepeth, who confirmed that Hedgepeth was living in Halifax County and that Brown was living with her and had been for at least five years, Webb reopened the fraud investigation, and Hedgepeth's recertification was subsequently put on hold.

After reopening the investigation, Webb found additional information suggesting that Hedgepeth and Brown lived together. Nash County school records indicated that Hedgepeth and Brown lived at the Womble Road address in Nashville before the move to Hollister. Brown bought a Mercedes in June 2018; when registering the car, he gave his address as 8185 Medoc Mountain Road—the address Hedgepeth uses as her mailing address. The Hollister Post Office confirmed to Webb that both Hedgepeth and Brown received mail at 8185 Medoc Mountain Road. Brown also provided a different Medoc Mountain Road address—8201 Medoc Mountain Road—for his driver's license. And when Webb interviewed Brown, he claimed that he lived with his sister in Greenville, North Carolina. Webb learned that Brown's sister receives food stamps but has never listed Brown as being a member of her household.

4

Webb had other reasons to question the truthfulness of the information she was getting from Hedgepeth and her relatives. For example, Hedgepeth asserted that she was paying her aunt $500 per month for rent, but Hedgepeth was not employed and her only apparent source of income was a $750 monthly Supplemental Security Income benefit received by one of her children, who is disabled. In addition, as part of her attempt to show that Brown did not live with her, Hedgepeth provided DSS with an envelope from a Greenville, North Carolina, branch of State Employees' Credit Union that was addressed to Brown at his claimed address in Greenville. Hedgepeth's cousin worked at that particular branch, and the envelope was machine-stamped by a postage machine at that branch. Because neither Brown nor Hedgepeth had accounts at the credit union, Webb believed that Hedgepeth and her cousin created the envelope to provide further proof that Brown lived in Greenville. Webb also believed at the time that what purported to be a letter from GEICO confirming insurance for Brown at the same Greenville address was a forgery.[1]

After considering the information uncovered by Webb, DSS concluded that Brown was a member of Hedgepeth's household and that his income had to be considered when calculating the amount of food stamps Hedgpeth was entitled to receive. Hedgepeth was therefore recertified as eligible to receive food stamps but at a lower amount--$94 per month less than her previous benefit. DSS mailed Hedgpeth notice of her recertification at the lower benefit amount on July 10, 2018.

---

[1]    As we will explain, subsequent events called into doubt Webb's view that the GEICO letter was a forgery.

5

Hedgepeth appealed the reduction of her benefits, and a hearing was held on August 30, 2018, before a Department of Health and Human Services hearing officer. The hearing was handled by employees from the DSS department responsible for Food Stamps eligibility; Webb, who worked in Program Integrity—a different DSS department—was not present for or otherwise involved in the hearing. At the hearing, Hedgepeth, her father, and her aunt testified that Hedgepeth lived in Hollister and that Brown did not live with her. While the County presented evidence showing several different addresses used by Brown, the employees handling the hearing were uncertain of their ability to use the information gathered by Webb. Accordingly, *none* of that evidence was presented at the hearing. *See* Hearing Officer's Order, J.A. 199 ("The County felt they had enough information to support the fact that Mr. Brown lived in the house during the period in question. However, at the hearing they did not present any information. The County representative simply stated that the Fraud Investigator gathered information and made the decision [to reduce benefits]. No information gathered by the investigator was submitted.").

The hearing officer concluded that DSS failed to prove that Brown lived with Hedgepeth, and that her benefits, therefore, were improperly reduced. DSS appealed the hearing officer's order. DSS noted in its appeal that the Food Stamps division had been "waiting for clarification from Program Integrity at the state level to see what documentation and verification could be provided to the Hearing Officer due to [the] open on-going investigation. We never heard back from Program Integrity . . . ." J.A. 450. On

6

September 28, 2018, the appeals officer issued an order upholding the decision below. The County restored Hedgepeth's benefits on October 3, 2018.

The next day, Webb compiled the information from her investigation and presented it to a magistrate for issuance of a warrant to arrest Hedgepeth for fraud. Although the actual warrant application is not in the record, there is no dispute that Webb did not include in it any information about the administrative hearing and determination that DSS failed to prove that Hedgepeth and Brown lived together. The magistrate found probable cause and issued the warrant. Hedgepeth was arrested in her home and held in custody for a couple of hours before being released.

The county prosecutor subsequently asked Webb to prepare a summary of her investigation and the evidence she had collected. Her report to the prosecutor, which she called the "Superior Court Summary," J.A. 410, included a narrative of her investigation and conclusions and listed 28 items of documentary evidence supporting her belief that Brown lived with Hedgepeth.

In April 2019, the prosecutor dismissed the charges against Hedgepeth. In a letter to DSS explaining his decision, the prosecutor noted that Hedgepeth claimed the GEICO letter was generated through its website, which she could demonstrate to a jury, and that the administrative ruling in favor of Hedgepeth would "be an impediment to the State in a criminal trial." J.A. 454. The prosecutor explained that he had "concluded that the State would not prevail in a jury trial in this case and [was] therefore dismissing the charge." He also noted, however, that "[t]his is not the same as saying Ms. Hedgepeth is innocent of any wrongdoing, and I am sorry I could not achieve a better result." J.A 454.

7

Hedgepeth subsequently filed this action on October 1, 2021, against Nash County, Webb, and Mary Reeves, who was Nash County's Food Stamps Supervisor during the relevant time. After discovery, the district court granted summary judgment in favor of the defendants on all counts. Hedgepeth appeals.

## II.

"We review the district court's grant of summary judgment *de novo*, applying the same standards as the district court." *Wannamaker-Amos v. Purem Novi, Inc.*, 126 F.4th 244, 254 (4th Cir. 2025). "Thus, we construe all facts and reasonable inferences in the light most favorable to the nonmoving party and ask whether genuine disputes of material fact preclude judgment as a matter of law." *Id.* (cleaned up).

Hedgepeth's complaint asserts nine overlapping causes of action under state and federal law. The claims can generally be categorized into three groups: those relating to Hedgepeth's arrest (claims of malicious prosecution and abuse of process); those relating to the process by which her benefits were reduced (claims of violations of her procedural due process rights); and those relating to the manner in which she was personally treated by Nash County employees (claims of equal protection violations, sex- and race-based discrimination, and negligent and intentional infliction of emotional distress). She asserts all claims against all three defendants.

### A. Arrest-based Claims

Hedgepeth's causes of action for malicious-prosecution and abuse-of-process are premised on her view that she never should have been arrested because the administrative

8

proceedings had already established that Brown did not live with her and that fact was not provided to the magistrate who issued the arrest warrant.

"When a person seeks to challenge a warrant-backed arrest under the Fourth Amendment as lacking probable cause, that challenge at most can be pursued through a cause of action for malicious prosecution." *Thurston v. Frye*, 99 F.4th 665, 673 (4th Cir. 2024) (cleaned up). To succeed on a Fourth-Amendment based malicious-prosecution claim, the plaintiff must establish that the defendants "(1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012). Unless the warrant applicant deliberately or recklessly made false material statements or omitted material information intending to make the application misleading, a determination by a neutral magistrate that probable cause exists is conclusive and thus fatal to a malicious prosecution claim. *See English v. Clarke*, 90 F.4th 636, 648 (4th Cir. 2024) ("Warrants and indictments usually conclusively determine the existence of probable cause, but not when an officer deliberately supplied misleading information that influenced the judge's or grand jury's decision.") (cleaned up); *Humbert v. Mayor & City Council of Baltimore City*, 866 F.3d 546, 556 (4th Cir. 2017) ("A party challenging the veracity of a warrant application must show that the officer(s) deliberately or with a reckless disregard for the truth made material false statements in the warrant application, or omitted from that application material facts with the intent to make, or with reckless disregard of whether they thereby made, the application misleading.") (cleaned up).

9

The district court concluded that there was no evidence showing Webb deliberately made material false statements or omitted material facts to make the warrant application misleading. The court pointed to Webb's explanation in her deposition that she did not include information about the administrative proceedings because those proceedings involved Hedgepeth's eligibility for food stamps and thus fell on the Food Stamps side of the department, while Webb was on the Program Integrity side investigating possible fraud. *See* J.A. 348 (Webb deposition explaining her view that the hearings "had nothing to do with the program integrity investigation. The food stamp hearing and program integrity are two different things."); *id.* ("[T]he food stamp hearing was not to determine whether she had committed fraud or not. The food stamp hearing was to determine eligibility . . . ."). In the district court's view, "[t]his testimony does not give rise to a plausible inference of a deliberate omission of facts she knew would negate probable cause, in light of Webb's stated position that the two prior hearings had nothing to do with the program integrity investigation." J.A. 537 (cleaned up). The district court alternatively held that the malicious-prosecution claim "fails as a matter of proof because the warrant application itself is not in the record. Accordingly, the court is unable to undertake the necessary inquiry . . . ." J.A. 539.

Because we may affirm for any reason appearing in the record, *see, e.g., McMahan v. Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers*, 964 F.2d 1462, 1467 (4th Cir. 1992), we need not consider Hedgepeth's specific challenges to the district court's analysis. Even if the district court's analysis was erroneous, reversal would not be required.

10

As we will explain, the information about the administrative proceedings was not material, and summary judgment in favor of the defendants was therefore proper.

To prevail on a malicious-prosecution claim, the plaintiff must show that the false statement or omission was *material*—that is, "necessary to the neutral and disinterested magistrate's finding of probable cause." *Humbert*, 866 F.3d at 556 (cleaned up). "To determine materiality, the Court must excise the offending inaccuracies and insert the facts recklessly omitted, and then determine whether or not the corrected warrant affidavit would establish probable cause." *Id.*; *see English,* 90 F.4th at 648.

As to probable cause, there is little question that the information actually presented to the magistrate was sufficient to establish probable cause to believe that Hedgepeth committed fraud by lying about living with Brown. "Probable cause to justify an arrest means facts and circumstances within the [applicant's] knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed an offense." *Humbert*, 866 F.3d at 555 (cleaned up). "While probable cause requires more than bare suspicion, it requires less than that evidence necessary to convict." *Id.* at 556 (cleaned up).

Here, Webb had two witnesses in a position to have direct knowledge tell her that Brown had been living with Hedgepeth for years. The witnesses were not anonymous, and they were related to Hedgepeth. Moreover, Webb's evidence showed that Brown was listed as a member of Hedgepeth's household on school records, and Brown used Hedgepeth's mailing address as his address when registering his car with the DMV. Whether or not this evidence would have been enough to convince a jury, particularly in the face of contrary

11

claims by other relatives, it is more than enough to establish probable cause. The question, then, is whether the information about the administrative proceedings would undermine the evidence gathered by Webb in a way that negates probable cause. *See id.* at 556 ("Omissions are made with reckless disregard when the evidence demonstrates that [the applicant] failed to inform the judicial officer of facts he knew would negate probable cause.") (cleaned up).

As previously discussed, the evidence Webb gathered after reopening the investigation *was not presented* to the hearing officer. A "corrected" warrant application would therefore include all the information gathered by Webb, along with a statement explaining that although recently concluded administrative proceedings had determined that DSS had not proven Brown lived with Hedgepeth, none of the evidence being presented to the magistrate was presented in the administrative hearing. Adding that statement does not negate probable cause or change the probable-cause analysis in any way. Because Webb's evidence was sufficient to establish probable cause, it is irrelevant that a different judge considering different evidence reached a different conclusion.

Accordingly, because the information that was presented was sufficient to establish probable cause and the omitted information was not material, there was no constitutional violation and Hedgepeth's arrest-based claims fail.[2] We therefore affirm the grant of summary judgment to the defendants as to these claims.

---

[2]     Because there was no constitutional violation, we need not consider whether the defendants would otherwise have been entitled to qualified immunity or whether Hedgepeth could have satisfied the other elements of her claim against Nash County under (Continued)

B. Due Process Claims

Although Hedgepeth was provided a hearing—and prevailed at that hearing—after her benefits were reduced, she contends that the Due Process clause required the County to provide a hearing *before* her benefits were reduced. Hedgepeth thus contends the district court erred by granting summary judgment in favor of the defendants on these claims. We disagree.

To establish a procedural due process violation, Hedgepeth must show that she had a property interest in her food-stamp benefits and was deprived of that interest without due process of law. *See Tri Cnty. Paving, Inc. v. Ashe Cnty.*, 281 F.3d 430, 436 (4th Cir. 2002); *Banks v. Block*, 700 F.2d 292, 295 (6th Cir. 1983) ("To trigger the application of due process concepts, there must be both governmental action and the deprivation of a life, liberty, or property interest to warrant constitutional protection.") (cleaned up).

The district court relied on our opinion in *Holman v. Block*, 823 F.2d 56 (4th Cir. 1987), when rejecting these claims. In *Holman*, we adopted the Sixth Circuit's analysis in *Banks v. Block* and held that food-stamp recipients have "no protected interest in the continuous receipt of food stamps." *Holman*, 823 F.2d at 59; *Banks*, 700 F.2d at 297 ("Under the Food Stamp Program . . . the certification period of eligibility . . . establishes no property interest beyond the term of the assigned period."). Hedgepeth, however, insists that *Holman* is inapplicable because the County reduced her benefits *after* she had been

---

*Monell v. Department of Social Services*, 436 U.S. 658 (1978). *See, e.g.*, *Balogh v. Virginia*, 120 F.4th 127, 138 (4th Cir. 2024) ("[Plaintiff's] *Monell* claim fares no better. Like qualified immunity, it too requires an underlying constitutional violation."), *cert. denied sub nom. Balogh v. Thomas*, No. 24-891, 2025 WL 1020379 (U.S. Apr. 7, 2025).

recertified, and she contends that due process requires a hearing before food stamps can be reduced during the certification period. The record does not support Hedgepeth's assertion.

The evidence in the record shows that the County began the recertification process in June 2018, after learning that Hedgepeth had moved to Halifax County. As Webb's re-opened fraud investigation progressed and additional information was uncovered, the recertification process was then placed "on hold" because of "questionable information that has to be resolved prior to the case being certified." J.A. 304. After considering Webb's information, DSS ultimately concluded that Brown lived with Hedgepeth and that his income must be considered when calculating Hedgepeth's benefit amount. By letter mailed on July 10, 2018, DSS informed Hedgepeth that she had been recertified for food stamps for the period of July 1, 2018, through December 31, 2018, at a lower benefit amount of $364 per month. Thus, contrary to Hedgpeth's assertion, her benefits were not lowered *after* she was certified. Instead, Hedgepeth was certified for a new six-month period at a benefit amount lower than she had received during the prior certification period.

We recognize that, as Hedgepeth points out, the hearing officer's decision states that Hedgepeth "was recertified in June 2018." J.A. 198. The decision also states, however, that Hedgepeth "was *recertified in June and early July 2018* with the decision notice being mailed July 10, 2018." *Id.* (emphasis added). And, though not relied on by Hedgepeth, a timeline prepared by a DSS employee likewise indicates that Hedgepeth was recertified in June and that recertification was put on hold after the investigation restarted, *see* J.A. 397-98. These imprecise statements—which do not even give a specific date in June—do not support Hedgepeth's assertion that her benefits were lowered in the middle of a

14

certification period. As discussed above, the DSS records make it clear that the recertification process started in June and was put on hold after Webb reopened the investigation, and that Hedgepeth was recertified for a new period of benefits at a lower amount. Indeed, the hearing officer's decision sends the case back to Nash County DSS with directions to "issue a new recertification determination decision." J.A. 200. If, as Hedgepeth contends, her benefits had been reduced after she had been recertified at a higher benefit amount, the hearing officer would not have ordered a new recertification but would instead have directed the County to reinstate the full benefit amount. Accordingly, Hedgepeth's focus on a snippet of information stripped of all context is insufficient to show a *genuine* issue of fact that would preclude summary judgment. *See, e.g., St. Louis N. Joint Venture v. P&L Enters., Inc.*, 116 F.3d 262, 265 n.2 (7th Cir. 1997) ("Although the non-movant is entitled on a motion for summary judgment to have all reasonable inferences drawn in its favor, the court is not required to draw unreasonable inferences from the evidence.") (cleaned up).

Because Hedgepeth's benefits were reduced when she was recertified for a new period of benefits, this case is directly controlled by *Holman*, as the district court concluded. Under *Holman*, Hedgepeth had "no protected interest in the continuous receipt of food stamps," 823 F.2d at 59, and no constitutional right to a hearing before the new certification period. The district court therefore properly granted summary judgment in favor of the defendants on Hedgepeth's Due Process claims.

15

## C. Remaining Claims

Hedgepeth's remaining federal claims of race- and sex-based discrimination under § 1981 and § 1983, and her state-law claims of malicious prosecution, abuse of process, intentional infliction of emotional distress, and negligent infliction of emotional distress may be summarily rejected. While Hedgepeth's brief mentions these claims in passing, the statement of the issues on appeal does not include a challenge to these rulings, and the brief does not include any substantive argument addressing those claims. Hedgepeth has thus abandoned any appellate challenge to the district court's rejection of these claims. *See Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) ("A party waives an argument by failing to present it in its opening brief or by failing to develop its argument— even if its brief takes a passing shot at the issue.") (cleaned up). And even if the issues were not abandoned, Hedgepeth presented no evidence showing she was discriminated against or treated differently because of her race or sex, and her state-law claims are foreclosed by our conclusions that her arrest was supported by probable cause and the information omitted by Webb was not material.

## III.

Accordingly, because we find no reversible error, we hereby affirm the decision of the district court.

*AFFIRMED*

16